HOUSTON *v.* LACK, WARDEN

No. 87-5428.   Argued April 27, 1988—Decided June 24, 1988

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, and STEVENS, JJ., joined. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR and KENNEDY, JJ., joined, *post*, p. 277.

*Penny J. White*, by appointment of the Court, 484 U. S. 1057, argued the cause and filed a brief for petitioner.

*Jerry L. Smith*, Deputy Attorney General of Tennessee, argued the cause for respondent. With him on the brief were *W. J. Michael Cody*, Attorney General, and *Gordon W. Smith*, Assistant Attorney General.*

---

*A brief of *amici curiae* urging affirmance was filed for the State of South Dakota et al. by *Roger A. Tellinghuisen*, Attorney General of South Dakota, and *Craig M. Eichstadt*, Assistant Attorney General, and by the Attorneys General for their respective States as follows: *John Van de Kamp* of California, *Robert Butterworth* of Florida, *Jim Jones* of Idaho, *Linley E. Pearson* of Indiana, *Robert T. Stephan* of Kansas, *Michael C. Moore* of Mississippi, *William L. Webster* of Missouri, *Mike Greely* of Montana, *Robert M. Spire* of Nebraska, *Stephen E. Merrill* of New Hampshire, *W. Cary Edwards* of New Jersey, *Lacy H. Thornburg* of North Carolina, *Robert Henry* of Oklahoma, *Travis Medlock* of South Carolina, *Mary Sue Terry* of Virginia, *Joseph B. Meyer* of Wyoming, and *Dave Frohnmayer* of Oregon.

JUSTICE BRENNAN delivered the opinion of the Court.

*Pro se* prisoners can file notices of appeal to the federal courts of appeals only by delivering them to prison authorities for forwarding to the appropriate district court. The question we decide in this case is whether under Federal Rule of Appellate Procedure 4(a)(1) such notices are to be considered filed at the moment of delivery to prison authorities for forwarding or at some later point in time.

I

Incarcerated in a Tennessee prison, petitioner Prentiss Houston filed a *pro se* petition under 28 U. S. C. § 2254 for a writ of habeas corpus in Federal District Court in Tennessee. That court declined to appoint counsel and entered judgment dismissing the habeas petition on January 7, 1986. Still acting *pro se*, petitioner drafted a notice of appeal and, on February 3, 1986 (27 days after the judgment), deposited it with the prison authorities for mailing to the District Court. This date of deposit was recorded in the prison log of outgoing mail. Petitioner also states without contradiction that he requested the prison to certify his notice for proof that it had been deposited for mailing on that date and requested that the notice be sent air mail, but that the prison refused these requests because he lacked funds to pay the fees the prison charged for such services. The record does not contain the envelope in which the notice of appeal was mailed, and therefore does not contain the postmark or any other evidence of when the prison authorities actually mailed the letter. The prison log, however, suggests that in addressing the notice the petitioner may have mistakenly used the post office box number of the Tennessee Supreme Court rather than that of the Federal District Court (both of which are in Jackson, Tennessee, approximately 81 miles from the prison). Although there is no direct evidence of the date on which the District Court received the notice, the notice was stamped

"filed" by the Clerk of the District Court at 8:30 a.m. on February 7, 1986, 31 days after the District Court's judgment was entered—that is, one day after the expiration of the 30-day filing period for taking an appeal established by Federal Rule of Appellate Procedure 4(a)(1).

Neither the District Court nor respondent suggested that the notice of appeal might be untimely. Rather, the District Court issued a certificate of probable cause on February 18, 1986, noting that the appeal presented a "question of first impression" in the jurisdiction. App. 22. On March 5, 1986, the United States Court of Appeals for the Sixth Circuit circulated a briefing schedule to the parties. On March 21, 1986, however, 13 days after the time had expired to request an extension of the time for filing a notice of appeal under Federal Rule of Appellate Procedure 4(a)(5), the Court of Appeals discovered the time problem concerning the filing of petitioner's notice of appeal and alerted the parties by entering an order requiring petitioner to show cause why the appeal should not be dismissed for want of jurisdiction. Eventually the Court of Appeals appointed counsel to argue the time question for petitioner. On May 22, 1987, the court entered an order dismissing the appeal as jurisdictionally out of time. We granted certiorari, 484 U. S. 1025 (1988), and now reverse.

## II

We last addressed questions concerning the timely filing of notices of appeals by *pro se* prisoners in *Fallen* v. *United States*, 378 U. S. 139 (1964). *Fallen* involved what was then Rule 37(a) of the Federal Rules of Criminal Procedure (the substance of which now appears in Federal Rule of Appellate Procedure 4(b)), under which a criminal defendant seeking to appeal had to file a notice of appeal with the clerk of the district court within 10 days after entry of the judgment being

appealed.[1] Two days before the 10-day deadline, Fallen, acting without counsel and while incarcerated, deposited a notice of appeal with prison authorities for mailing to the Clerk of the District Court. The notice, however, was not received by the Clerk of the court until four days after the deadline. We noted that "the timely filing of a notice of appeal is a jurisdictional prerequisite to the hearing of the appeal," 378 U. S., at 142, but concluded that Rule 37(a) could not be read literally to bar Fallen's appeal because, under the circumstances of that case, Fallen "had done all that could reasonably be expected to get the letter to its destination within the required 10 days." *Id.*, at 144. Justice Stewart, joined by Justices Clark, Harlan, and BRENNAN, concurred on the ground that "for purposes of Rule 37(a)(2), a defendant incarcerated in a federal prison and acting without the aid of counsel files his notice of appeal in time, if, within the 10-day period provided by the Rule, he delivers such notice to the prison authorities for forwarding to the clerk of the District Court. In other words, in such a case the jailer is in effect the clerk of the District Court within the meaning of Rule 37." *Ibid.*

We conclude that the analysis of the concurring opinion in *Fallen* applies here and that petitioner thus filed his notice within the requisite 30-day period when, three days before the deadline, he delivered the notice to prison authorities for forwarding to the District Court. The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to en-

---

[1] At the time Rule 37(a), as amended in 1956 and 1962, provided:

"(1) *Notice of Appeal.* An appeal permitted by law from a district court to a court of appeals is taken by filing with the clerk of the district court a notice of appeal in duplicate. . . .

"(2) *Time for Taking Appeal.* An appeal by a defendant may be taken within 10 days after entry of the judgment or order appealed from. . . ."

sure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the

date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

Respondent stresses that a petition for habeas corpus is a civil action, see *Browder* v. *Director, Dept. of Corrections of Illinois,* 434 U. S. 257, 265, n. 9, 269 (1978), and that the timing of the appeal here is thus, unlike the direct criminal appeal at issue in *Fallen,* subject to the statutory deadline set out in 28 U. S. C. § 2107. But, as relevant here, § 2107 merely provides:

> "[N]o appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree."

The statute thus does not define when a notice of appeal has been "filed" or designate the person with whom it must be filed, and nothing in the statute suggests that, in the unique circumstances of a *pro se* prisoner, it would be inappropriate to conclude that a notice of appeal is "filed" within the meaning of § 2107 at the moment it is delivered to prison officials for forwarding to the clerk of the district court.

Federal Rules of Appellate Procedure 3(a) and 4(a)(1) are a little more specific. Rule 3(a) provides: "An appeal permitted by law as of right from a district court to a court of appeals shall be taken by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4." Rule 4(a)(1) provides:

> "In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from. . . ."

Rules 3(a) and 4(a)(1) thus specify that the notice should be filed "with the clerk of the district court." There is, however, no dispute here that the notice must be directed to the

clerk of the district court—delivery of a notice of appeal to prison authorities would not under any theory constitute a "filing" unless the notice were delivered for forwarding to the district court. The question is one of timing, not destination: whether the moment of "filing" occurs when the notice is delivered to the prison authorities or at some later juncture in its processing. The Rules are not dispositive on this point, for neither Rule sets forth criteria for determining the moment at which the "filing" has occurred. See *Fallen*, 378 U. S., at 144 (Stewart, J., joined by Clark, Harlan, and BRENNAN, JJ., concurring) (concluding that under Rule 37(a) a "filing with the clerk of the district court" of a *pro se* prisoner's notice of appeal occurs when he delivers it to prison authorities for forwarding to the district court). Indeed, our own Rules recognize that the moment when a document is "filed" with a court can be the moment it is sent to that court. See Rule 28.2 (providing that a document can be deemed "filed" at the moment it is deposited in the mail for delivery to the Clerk of the Court).

Respondent concedes that receipt of a notice of appeal by the clerk of the district court suffices to meet the "filing" requirement under Rules 3 and 4 even though the notice has not yet been formally "filed" by the clerk of the court. *Parissi* v. *Telechron, Inc.*, 349 U. S. 46, 47 (1955); see also, *e. g.*, *Deloney* v. *Estelle*, 661 F. 2d 1061, 1062–1063 (CA5 1981); *Aldabe* v. *Aldabe*, 616 F. 2d 1089, 1091 (CA9 1980); *United States* v. *Solly*, 545 F. 2d 874, 876 (CA3 1976). But the rationale for concluding that receipt constitutes filing in the ordinary civil case is that the appellant has no control over delays between the court clerk's receipt and formal filing of the notice. See, *e. g.*, *Deloney, supra*, at 1063; *Aldabe, supra*, at 1091; *Solly, supra*, at 876. This rationale suggests a far different conclusion here, since, as we discussed above, the lack of control of *pro se* prisoners over delays extends much further than that of the typical civil litigant: *pro se* prisoners have no control over delays between

the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally.

True, a large body of lower court authority has rejected the general argument that a notice of appeal is "filed" at the moment it is placed in the mail addressed to the clerk of the court—this on the ground that *receipt* by the district court is required.[2] See, *e. g., Haney* v. *Mizell Memorial Hospital,* 744 F. 2d 1467, 1472 (CA11 1984); *In re LBL Sports Center, Inc.,* 684 F. 2d 410, 413 (CA6 1982); *Sanchez* v. *Board of Regents of Texas Southern University,* 625 F. 2d 521, 522 (CA5 1980); *In re Bad Bubba Racing Products, Inc.,* 609 F. 2d 815, 816 (CA5 1980); *Allen* v. *Schnuckle,* 253 F. 2d 195, 197 (CA9 1958). But see *In re Pigge,* 539 F. 2d 369 (CA4 1976) (adopting the mailbox rule). To the extent these cases state the general rule in civil appeals, we do not disturb them. But we are persuaded that this general rule should not apply here. First, as we discussed above, nothing in Rules 3 and 4 compels the conclusion that, in all cases, receipt by the clerk of the district court is the moment of filing. The lower courts have, in fact, also held that receipt by a District Judge, *Halfen* v. *United States,* 324 F. 2d 52, 54 (CA10 1963), or at the former address for the District Court Clerk, *Lundy* v. *Union Carbide Corp.,* 695 F. 2d 394, 395, n. 1 (CA9 1982), can be the moment of filing. And the United States Court of Appeals for the Federal Circuit does not read Rule 4(a) as necessarily making receipt the moment of filing, for under Rule 10(a)(1) of that Circuit a notice of appeal can be deemed filed on mailing if the district court from which the appeal

---

[2] Respondent suggests that this Court has rejected the mailbox rule, citing *Parissi* v. *Telechron, Inc.,* 349 U. S. 46 (1955), and *United States* v. *Lombardo,* 241 U. S. 73 (1916). *Parissi,* though, merely held that timely receipt was sufficient, not necessary, to meet the filing requirement under 28 U. S. C. § 2107, and *Lombardo* did not involve the filing of a notice of appeal but a filing requirement imposed by a criminal statute. Neither case involved the efforts of a prisoner to file a notice of appeal without the aid of counsel.

is taken has adopted a rule which deems a document filed on mailing. See generally *Placeway Construction Corp.* v. *United States*, 713 F. 2d 726 (CA Fed. 1983).

Second, the policy grounds for the general rule making receipt the moment of filing suggest that delivery to prison authorities should instead be the moment of filing in this particular context. As detailed above, the moment at which *pro se* prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk. Thus, whereas the general rule has been justified on the ground that a civil litigant who *chooses* to mail a notice of appeal assumes the risk of untimely delivery and filing, see, *e. g., Bad Bubba, supra,* at 816, a *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk. Further, the rejection of the mailbox rule in other contexts has been based in part on concerns that it would increase disputes and uncertainty over when a filing occurred and that it would put all the evidence about the date of filing in the hands of one party. See, *e. g., United States* v. *Lombardo*, 241 U. S. 73, 78 (1916). These administrative concerns lead to the opposite conclusion here. The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one. Relying on the date of receipt, by contrast, raises such difficult to resolve questions as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped "filed" on one date was actually received ear-

lier.[3]   These questions are made particularly difficult here because any delays might instead be attributable to the prison authorities' failure to forward the notice promptly. Indeed, since, as everyone concedes, the prison's failure to act promptly cannot bind a *pro se* prisoner, relying on receipt in this context would raise yet more difficult to resolve questions whether the prison authorities were dilatory.   The prison will be the only party with access to at least some of the evidence needed to resolve such questions—one of the vices the general rule is meant to avoid—and evidence on any of these issues will be hard to come by for the prisoner confined to his cell, who can usually only guess whether the prison authorities, the Postal Service, or the court clerk is to blame for any delay.

We thus conclude that the Court of Appeals had jurisdiction over petitioner's appeal because the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.[4]   The judgment of the Court of Appeals is accordingly

*Reversed.*

---

[3] In this very case, for example, it is not clear when the notice was actually mailed, and petitioner alleges both that the mail service was slower than advertised and that the date stamped on the notice is not the date of receipt.   In connection with the latter allegation, he notes that most of the papers mailed to the District Court were stamped as filed at 8:30 a.m. and suggests that the time of stamping may simply reflect a method of processing incoming papers wherein the papers received in the court's post office box are not collected and stamped until the start of the *following* working day.   See generally *In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F. 2d 213, 216, n. 7 (CA8 1977) (leaving it open to party to prove that clerk received the notice of appeal on a date earlier than that recorded on it); *Da'Ville v. Wise*, 470 F. 2d 1364, 1365, and n. 2 (CA5 1973) (refusing to hold notice untimely when the court clerk's practices created a strong possibility that the notice was not stamped when received).

[4] Because of our holding, we need not reach petitioner's other arguments: that any untimeliness should be excused because he "did all he could" under *Fallen v. United States*, 378 U. S. 139, 144 (1964); that the District Court received the notice on time but stamped it late; that he was

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUS-
TICE O'CONNOR, and JUSTICE KENNEDY join, dissenting.

Today's decision obliterates the line between textual con-
struction and textual enactment. It would be within the
realm of normal judicial creativity (though in my view wrong)
to interpret the phrase "filed with the clerk" to mean "mailed
to the clerk," or even "mailed to the clerk or given to a person
bearing an obligation to mail to the clerk." But interpreting
it to mean "delivered to the clerk or, if you are a prisoner,
delivered to your warden" is no more acceptable than any of
an infinite number of variants, such as: "delivered to the
clerk or, if you are out of the country, delivered to a United
States consul"; or "delivered to the clerk or, if you are a sol-
dier on active duty in a war zone, delivered to your command-
ing officer"; or "delivered to the clerk or, if you are held hos-
tage in a foreign country, meant to be delivered to the clerk."
Like these other examples, the Court's rule makes a good
deal of sense. I dissent only because it is not the rule that
we have promulgated through congressionally prescribed
procedures.

I

This case requires us to construe one statutory provision
and two provisions of the Federal Rules of Appellate Proce-
dure. The former is 28 U. S. C. § 2107, which sets a statu-
tory, jurisdictional deadline for the filing of notices of appeal
in civil actions such as this habeas proceeding. It provides:

> "[N]o appeal shall bring any judgment, order or decree
> in an action, suit, or proceeding of a civil nature before a
> court of appeals for review unless notice of appeal is
> *filed*, within thirty days after the entry of such judg-
> ment, order or decree" (emphasis added).

---

lulled into thinking that his appeal was timely by the issuance of a certifi-
cate of probable cause and a briefing schedule and thus any untimeliness
should be excused because of "unique circumstances" under *Harris Truck
Lines, Inc.* v. *Cherry Meat Packers, Inc.*, 371 U. S. 215, 217 (1962), and
*Thompson* v. *INS*, 375 U. S. 384 (1964); and that his notice of appeal
should be treated as a motion for extension of time under Rule 4(a)(5).

Although the statute itself does not define when a notice of appeal has been "filed" or designate with whom it must be filed, the Federal Rules of Appellate Procedure fill in these details. Federal Rule of Appellate Procedure 3(a) provides:

> "An appeal permitted by law as of right from a district court to a court of appeals shall be taken by *filing a notice of appeal with the clerk of the district court* within the time allowed by Rule 4" (emphasis added).

This is supplemented by Federal Rule of Appellate Procedure 4(a)(1), which provides:

> "In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be *filed with the clerk of the district court* within 30 days after the date of entry of the judgment or order appealed from . . ." (emphasis added).

It is clear, then, that there was a notice of appeal effective to give the Court of Appeals jurisdiction in this case if, and only if, it was "filed with the clerk of the district court" within the 30-day period.

The Court observes that "filed with the clerk" could mean many different things, including merely "mailed to the clerk." *Ante*, at 272–274. That is unquestionable. But it is the practice in construing such a phrase to pick a single meaning, and not to impart first one, and then another, as the judicially perceived equities of individual cases might require. Some statutory terms, such as "restraint of trade," *Business Electronics Corp.* v. *Sharp Electronics Corp.*, 485 U. S. 717, 731–733 (1988), invite judicial judgment from case to case; but a provision establishing a deadline upon which litigants are supposed to rely is not of that sort. That is why we adopted the proviso in Rule 28.2 of our own Rules, which the Court unexpectedly invokes in support of its position. Rule 28.2 reads:

> "To be timely filed, a document must be received by the Clerk within the time specified for filing, *except that* any document shall be deemed timely filed if it has been deposited in a United States post office or mailbox, with first-class postage prepaid, and properly addressed to the Clerk of this Court, within the time allowed for filing, and if there is filed with the Clerk a notarized statement by a member of the Bar of this Court, setting forth the details of the mailing, and stating that to his knowledge the mailing took place on a particular date within the permitted time."   (Emphasis added.)

Since "received by the Clerk" must, in the context of such a rule, reasonably be understood to have a unitary meaning, which would of course normally be actual receipt, we felt constrained to *specify* an exception in which mailing would suffice.   It would have been as inappropriate (though no less possible) there as in the present case to create the exception through interpretation—reasoning that the Post Office can be deemed the agent of the addressee, *Household Fire & Carriage Accident Ins. Co.* v. *Grant,* 4 Ex. D. 216 (1879) ("[P]ost office [is] the agent of both parties"), and hence it is theoretically possible to consider the document "received by" the Clerk when it is mailed, and the policy considerations usually militating in favor of a rule of actual receipt are well enough satisfied by an affidavit from a member of our Bar, etc.

If the need for a uniform meaning is apparent even with respect to ordinary statutory deadlines, and indeed even with respect to court-created rules that can be amended at the judges' discretion, it is even more apparent when a statutory deadline bearing upon the very jurisdiction of the courts is at issue.   In that context, allowing courts to give different meanings from case to case allows them to expand and contract the scope of their own competence.   That this is not envisioned is plain (if any citation is needed) from Rule 26(b) of the Federal Rules of Appellate Procedure, which specifically

excepts from the courts' broad equitable power to "suspend the requirements or provisions of any of these rules in a particular case," Fed. Rule App. Proc. 2, the power to "enlarge the time for filing a notice of appeal." When we adopted Rules 3 and 4 of the Federal Rules of Appellate Procedure we delayed, as required by law, their effective date until 90 days after they were "reported to Congress by the Chief Justice," 28 U. S. C. § 2072, so that Congress might consider whether it wished to legislate any changes in them. Surely Congress could not have imagined that "filing . . . with the clerk" in Rule 3(a) and "filed with the clerk" in Rule 4(a)(1) could have a meaning as remote from plain English as "delivered to the warden of a prison"—or whatever else might be held in the future to fit today's announced "rationale . . . that the appellant has no control over delays," *ante*, at 273.

The Court seeks to have it both ways, at one and the same time abandoning a unitary interpretation of "filed" for purposes of the present decision, yet purporting "not [to] disturb" the many cases stating that a notice of appeal is filed when received, "[t]o the extent these cases state the general rule." *Ante*, at 274. See, *e. g.*, *Parissi* v. *Telechron, Inc.*, 349 U. S. 46, 47 (1955) (holding that timely receipt satisfies 28 U. S. C. § 2107); *United States* v. *Lombardo*, 241 U. S. 73, 76 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); *Haney* v. *Mizell Memorial Hospital*, 744 F. 2d 1467, 1472 (CA11 1984); *In re LBL Sports Center, Inc.*, 684 F. 2d 410, 413 (CA6 1982); *In re Robinson*, 640 F. 2d 737, 738 (CA5 1981); *In re Ramsey*, 612 F. 2d 1220, 1223 (CA9 1980); *In re Bad Bubba Racing Products, Inc.*, 609 F. 2d 815, 816 (CA5 1980); *Ward* v. *Atlantic Coast Line R. Co.*, 265 F. 2d 75, 80 (CA5 1959), rev'd on other grounds, 362 U. S. 396 (1960); *Allen* v. *Schnuckle*, 253 F. 2d 195, 197 (CA9 1958). It seems to me that to leave them undisturbed only "to the extent [they] state the general rule" is to disturb them profoundly. The rationale of today's decision is that any of various theoretically possible meanings

of "filed with the clerk" may be adopted—even one as remote as "addressed to the clerk and given to the warden"—depending upon what equity requires. It may turn out that we will not often agree that equity requires anything other than "received by the clerk," but parties will often argue it, and the lower courts will sometimes hold it. Thus is wasteful litigation in our appellate courts multiplied.

Petitioner Prentiss Houston's notice of appeal in this case was stamped received 31 days after the District Court's judgment was entered—that is, one day after the expiration of the 30-day filing period set out in Federal Rule of Appellate Procedure 4(a)(1). Since there is no legal warrant for creating a special exception to the rule of receipt for the benefit of incarcerated *pro se* appellants, I cannot join the Court in reversing the judgment on that basis.

## II

Petitoner advanced several additional arguments supporting reversal which the Court did not have to reach. *Ante*, at 276–277, n. 4. I must consider them, and, having done so, find that none of them has merit.

First, petitioner asserts that his untimeliness in filing his notice of appeal should be excused because he "did all he could under the circumstances," as required by *Fallen* v. *United States*, 378 U. S. 139, 144 (1964). This argument fails because there is no warrant for equitable tolling of filing deadlines in the civil context of this habeas proceeding as there was in the criminal context that was at issue in *Fallen*. The bar erected by § 2107 in civil cases is jurisdictional, and this Court is without power to waive it, no matter what the equities of a particular case. As noted above, this is made explicit in Rule 26(b) of the Federal Rules of Appellate Procedure. In *Fallen*, by contrast, there was no jurisdictional statute at issue, and the relevant Federal Rule of Criminal Procedure 2 provided that a "just determination" should be achieved. See 378 U. S., at 142.

Second, petitioner maintains that he was lulled into thinking that his appeal was timely by the issuance of a certificate of probable cause and briefing schedule, and thus did not move for an extension of time within the 30-day grace period, see Fed. Rule App. Proc. 4(a)(5). This, he suggests, constitutes a "unique circumstance" of the sort recognized in *Harris Truck Lines, Inc.* v. *Cherry Meat Packers, Inc.*, 371 U. S. 215, 217 (1962); *Thompson* v. *INS*, 375 U. S. 384, 387 (1964); and *Wolfsohn* v. *Hankin*, 376 U. S. 203 (1964). Petitioner asserts that those cases establish an equitable doctrine that sometimes permits the late filing of notices of appeal. Our later cases, however, effectively repudiate the *Harris Truck Lines* approach, affirming that the timely filing of a notice of appeal is "mandatory and jurisdictional." *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 58, 61 (1982); see also *Browder* v. *Director, Dept. of Corrections of Illinois*, 434 U. S. 257 (1978). As we observed in *United States* v. *Locke*, 471 U. S. 84, 100–101 (1985):

> "Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced. 'Any less rigid standard would risk encouraging a lax attitude toward filing dates,' *United States* v. *Boyle*, 469 U. S. [241,] 249 [(1985)]. A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day."

Finally, petitioner asserts that his notice of appeal should be treated as a motion for extension of time under Federal Rule of Appellate Procedure 4(a)(5). That Rule, however, was specifically amended to require that *a motion* must be filed with the district court to obtain an extension, and its text precludes treating a late filed notice as being a motion. As revised, the Rule explicitly states:

"The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal *upon motion* filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)" (emphasis added).

The Advisory Committee's Notes on Appellate Rule 4(a)(5) explain:

"Under the present rule there is a possible implication that prior to the time the initial appeal time has run, the district court may extend the time on the basis of an informal application. The amendment would require that the application must be made by motion, though the motion may be made ex parte. After the expiration of the initial time a motion for the extension of the time must be made in compliance with the F. R. C. P. and local rules of the district court." 28 U. S. C. App., p. 469.

The courts below were therefore without power to treat petitioner's late filed notice of appeal as a motion for extension of time under Federal Rule of Appellate Procedure 4(a)(5).

*        *        *

Twenty-four years ago Justice Clark, joined by Justices Harlan, Stewart, and WHITE, said in the dissent in *Thompson:*

"Rules of procedure are a necessary part of an orderly system of justice. Their efficacy, however, depends upon the willingness of the courts to enforce them according to their terms. Changes in rules whose inflexibility has turned out to work hardship should be effected by the process of amendment, not by *ad hoc* relaxations by this Court in particular cases. Such dispensations in the long run actually produce mischievous results, undermining the certainty of the rules and causing confusion among the lower courts and the bar." 375 U. S., at 390.

That could not be more correct, nor more applicable to the present case. The filing rule the Court supports today seems to me a good one, but it is fully within our power to adopt it by an amendment of the Rules. Doing so instead in the present fashion not only evades the statutory requirement that changes be placed before Congress so that it may reject them by legislation before they become effective, 28 U. S. C. § 2072, but destroys the most important characteristic of filing requirements, which is the certainty of their application. It is hard to understand why the Court felt the need to short-circuit the orderly process of rule amendment in order to provide immediate relief in the present case. Petitioner delivered his notice of appeal to the warden three days before it was due to be filed with the Clerk. It would have been imprudent even to place it in a mailbox with the deadline so close at hand.

For the reasons stated, I respectfully dissent.