OPINION OF THE COURT
Louis C. Benza, J.
Motion by claimant for an order for "leave to serve a late *1052 Notice of Intention To File Claim nunc pro tunc”[1] and cross motion by defendant for dismissal of claim No. 87329.
This action arises from injuries suffered by claimant on October 8, 1992 when he was assaulted by a fellow inmate at Eastern New York Correctional Facility; the claim alleges that the State breached its duty to provide for claimant’s safety. Claimant, acting pro se, filed and served a notice of intention to file a claim. It was sworn to January 5, 1992 and received by the Attorney-General and the court on January 8, 1993, which was a Friday and the 92nd day after October 8, 1992.
Claimant subsequently acquired the services of an attorney, and counsel filed and served the claim, which was assigned claim No. 87329 by the Chief Clerk of the Court. In his answer, counsel for defendant asserted, as a first affirmative defense, that claimant "served neither a notice of intention nor the claim on the State within ninety (90) days of the claim’s alleged accrual”.
Counsel for claimant does not deny that the notice of intention was received by the Attorney-General beyond the statutory 90-day period but argues that it should be deemed timely because it was delivered to prison officials for mailing before expiration of the statutory time limitation. Counsel acknowledges that, in making this argument, he is urging the court to adopt for New York State courts the rule enunciated by the United States Court of Appeals for the Second Circuit in Dory v Ryan (999 F2d 679 [1993]), a case involving construction of rule 5 (e) of the Federal Rules of Civil Procedure.
In Dory (supra), the Second Circuit applied to the service of complaints a rule previously announced by the United States Supreme Court in Houston v Lack (487 US 266 [1987]) which dealt with the structurally similar rules 4 (a) (1) and 3 (a) of the Federal Rules of Appellate Procedure. Briefly stated, the holding of Houston is that because of the unique difficulties facing prison pro se litigants, who "cannot take the steps other litigants can take to monitor the processing of their notices of appeal” (487 US, at 270) — or, pursuant to Dory, other time-critical legal documents — filing of such documents is complete when they are turned over by the inmate to those prison officials responsible for placing them in the mail.[2]
*1053 The rationale behind this rule and its reasonableness under the language of the applicable Federal statutes are fully set forth in the decisions cited above. Our more immediate concern is whether such a rule is equally justifiable with respect to the commencement of actions in this court, whether it would conflict with the statutory provisions applicable to the commencement of actions in this court, and whether it is the role of a court, rather than the Legislature, to make such a sweeping change in Court of Claims practice. (Although counsel urges that the rule should be adopted for "New York”, our jurisdiction does not extend beyond the Court of Claims, which has, to a significant degree, procedural rules that differ from those applicable in other trial courts of this State.)
This question has been addressed by the courts in other States, and the answer has varied for a number of reasons. A review (nonexhaustive) of those decisions reveals the following: Some States which have procedural rules that mirror or are extremely similar to the applicable Federal rules have followed Houston (supra) for that reason (Benbow v State, 614 So 2d 398 [Miss 1993]; State v Halbom, 495 NW2d 83 [ND 1993]; Commonwealth v Hartsgrove, 407 Mass 441, 553 NE2d 1299 [1990]). Other States have adopted the rationale of the Supreme Court in Houston in creating a similar "mailbox” rule for their inmate litigants (In re Jordan, 4 Cal 4th 116, 840 P2d 983 [1992]; Ex Parte Williams, — Ala —, — So 2d—, 1992 WL 164954 [1992]; Kellogg v Journal Communications, 108 WL 474, 836 P2d 12 [1992]; Haag v State, 591 So 2d 614 [Fla 1992]). And at least one other State has both echoed the reasoning of Houston and also found authority for such a rule in its own constitution (Woody v State, 833 P2d 257 [Okla 1992]).
In those States that have declined to adopt the "mailbox” rule espoused in Houston (supra), some have simply referred to the fact that that case does not set a constitutional standard, but merely interprets a Federal procedural rule inapplicable to them (Norby v Santiam Correctional Inst., 116 Ore App 239, 841 P2d 1 [1992]; State ex rel. Tyler v Alexander, 52 Ohio St 3d 84, 555 NE2d 966 [1990]). Other States, however, have held that such a procedure is inappropriate for practice *1054 in their courts. In Arkansas, the courts are empowered to excuse untimeliness for good cause, and a rule permitting "mailbox” filing would both conflict with this power and, in the view of the court, be unnecessary to protect inmates’ rights (Hughes v State, 1993 WL 132971 [Ark, Apr. 26, 1993]). Missouri already has a procedure specifically enacted to govern prisoner applications (Vollmer v State, 775 SW2d 230 [Mo 1989]), and a lower court in Pennsylvania, in addition to declining to encourage pro se litigation by more lenient rules, cited the fact that most of the obstacles recounted in Houston are overcome by a State holding that prisoners seeking review of certain decisions are entitled to counsel (Turner v Commonwealth of Pennsylvania, 137 Pa Commw 609, 587 A2d 48 [1990]). And, in Carr v State (554 A2d 778), the Supreme Court of Delaware held that a prisoner "mailbox” rule would simply be "inappropriate” for that State (554 A2d, at 779): the applicable State statute and regulations explicitly make filing complete at the time of receipt, not mailing; the appellate filing deadline is not subject to enlargement for other reasons as it is in Federal practice; and the mechanisms used in Delaware State prisons do not result in a permanent record showing when each piece of mail has been deposited with prison officials.
In New York, the statutes governing filing and service of the papers initiating Court of Claims actions do not approximate, much less mirror, the Federal rules considered in Houston and Dory (supra). While this court has no argument with the concerns expressed in those cases, the Legislature has already enacted procedures that give an incarcerated pro se litigant a measure of control over and knowledge about the processing of his claim.
Section 11 (a) of the Court of Claims Act requires that claims brought in this court must be served on the Attorney-General by personal service — admittedly difficult for incarcerated claimants to accomplish — or by certified mail, return receipt requested. By using this latter form of service, which is available to prisoners,[3] the claimant obtains a signed return receipt that both informs him of the date on which service was completed and can be used as proof of timely service should the need arise. If an inmate requests that a document *1055 be filed by certified mail, return receipt requested, but prison authorities for some reason simply put it in regular mail, their failure to carry out the inmate’s directions estops the State from raising the defense of improper service (Fuller v State of New York, claim No. 86940-A, motion No. M-48197, filed Oct. 26, 1993, Weisberg, J.).
This court’s practice of acknowledging, in writing, the receipt of every notice of intention and claim, and identifying the date of receipt, allows the litigant to know if filing, as well as service, was timely and, again, can be used to prove timeliness if it is ever challenged. The Attorney-General issued similar receipt letters for many years but has, regrettably, abandoned the practice. In order for the State to seek dismissal of an action on the ground that a notice of intention or a claim was either untimely or was improperly served on the Attorney-General, section 11 (c) of the Court of Claims Act requires that clear, prompt notice of the defect must be given either in a preanswer motion or in the answer itself.
A pro se inmate claimant in this State, therefore, is quickly aware if his notice of intention was either filed or served too late. The date of receipt by the Attorney-General is indicated on his certified mail return receipt, and the court’s acknowledgement letter confirms the date of filing. With respect to a claim, both of these protections are available and, in addition, the State must notify him within 40 days if untimeliness or improper service will be raised as an affirmative defense.[4] If for any reason, either or both of these documents were not served within the applicable Court of Claims Act time limits, the claimant may move for permission to file an untimely claim, pursuant to section 10 (6) of the Court of Claims Act, at any time prior to expiration of the applicable (and typically much longer) Statute of Limitations contained in CPLR article 2.
In the court’s view, these various protections, taken together, appear to provide safeguards over a prisoner’s right to bring suit and his ability to monitor the process of his claim that are equal to, if not greater than, those achieved by a "mailbox” filing rule. The procedures in effect in this State *1056 are far more certain than a system which relies primarily on the individual record-keeping systems in place in numerous correctional facilities. They also give greater effect to the policy considerations implicit in the imposition of time restrictions in the first place: providing prompt notice and permitting effective investigation of the circumstances underlying a claim. The ability of a pro se inmate to prove timeliness — with the certified mail receipt form and the court’s acknowledgement letter — is seen as a definite advantage, along with the second chance available, in most instances, by the mechanism permitting the filing of untimely claims. The greatest weakness of the current system is that a litigant is not given prompt notification by the office of the Attorney-General if a notice of intention has not been received in time, although this information is also available on the certified mail receipt form.
Finally, and perhaps most pertinently, the Legislature’s close attention to and frequent enactment of very specific legislation relating to the service and filing of claims and notices of intention make it highly inappropriate for the court to adopt such a sweeping change as that suggested by counsel for claimant, at least in the absence of an urgent need for such a step. As set forth above, no such need is perceived. For these reasons, we will decline the invitation to alter the rules for filing and service of claims in this court and hold that, consistent with established and well-recognized rules, claimant’s notice of intention is untimely and grant defendant’s cross motion to dismiss claim No. 87329.
Counsel for claimant has wisely included in his motion papers information relevant to the statutory factors that must be considered in determining a motion for late filing, pursuant to section 10 (6) of the Court of Claims Act, and his motion will be construed as seeking such relief. This motion was commenced 10 months after the accrual of the cause of action, and an action asserting a like claim against a citizen of the State would not be barred by the applicable Statute of Limitations (Court of Claims Act § 10 [6]; CPLR 214).
Timely filing of the claim did not occur, according to claimant’s affidavit, because he believed that he would meet the statutory time limit by mailing the notice of intention on January 5, 1993. It is not altogether certain that the notice of intention would be effective even if it had arrived earlier. Claimant’s affidavit of service states only that it was mailed "via the United States Postal Services”, and defendant’s an *1057 swer alleges that, in addition to being untimely, the notice of intention was not served in the manner “by a method prescribed by the Court of Claims Act § 11 (a)”. Improper service was not, however, made a basis for this motion to dismiss. We find claimant’s excuse for delay unsatisfactory.
Although untimely by a matter of days, the notice of intention did provide reasonably prompt notice of the contemplated lawsuit, and the occurrence of an assault within a prison, particularly one which results in serious injury, also gives notice of the injury and both opportunity and motivation for the State to investigate the underlying facts. Counsel for defendant has, in fact, provided copies of an injury report and an Inmate Misbehavior Report that were completed at the time claimant was injured. Although it is argued that claimant’s refusal to fill out the requested information on the injury report interfered with prison officials’ ability to investigate the accident, this does not establish that he refused to talk about the incident and, in any event, his assailant and the general circumstances were known to the officials (see below). The court is not persuaded, therefore, that defendant will be prejudiced if the claim is permitted. Claimant’s lack of any other realistic remedy is, under these circumstances, apparent.
Claimant’s medical records, attached to the moving papers, indicate that he suffered serious injuries: puncture wounds inflicted in the assault caused a reoccurring leak of cerebral spinal fluid and led to several hospitalizations. Included among the exhibits submitted with the notice of motion is a copy of an Inmate Misbehavior Report, charging claimant with fighting. It contains the following description of the assault, as reported by the charging correction officer: "At approx. 7:45 AM Inmate Bargas came into the wood shop area & was talking to Inmate Espinal, inmate Bargas works in the mattress shop, Espinal works in the wood shop. Both inmates walked out of the wood shop, a short while later I observed inmate Espinal & Bargas fighting in the rear of the wood shop. I yelled at them to stop fighting but they did not do so; I separated them and Mr. R. Morgenthal took inmate Bargas to the front of the shop, I escorted inmate Espinal to the facility Hosp. for a physical, he was bleeding from his head and back. Inmate Bargas was later taken to the facility Hosp. for a physical, and later placed in KL [keeplock] Status.” In his affidavit (although not, as counsel for defendant notes, in the claim), claimant states that it was against prison regulations *1058 for an inmate assigned to the mattress shop to go into the wood shop and that it was also against regulations for inmate Bargas to be allowed to remove shears from the mattress shop. He also states that the back area of Building 9, where the fight occurred, was improperly supervised. While claimant’s own actions apparently contributed to the altercation in which he was injured, the allegations that correction officers ignored certain rules and regulations which, if observed, would have prevented the assault indicate sufficient appearance of legal merit to warrant granting the requested relief.
In accordance with the foregoing, the court finds that the preponderance of factors considered weighs in claimant’s favor. Therefore, within 60 days of the date of filing of this order, claimant shall file and serve his claim, which shall be in general respects identical to the claim filed in claim No. 87329 but which shall allege any claimed violation of prison rules and regulations. Claimant is to follow all of the requirements of the Court of Claims Act and the Uniform Rules for the Court of Claims in filing and serving his claim.

. As discussed below, the court has also construed this motion, in part, to be an application for permission to file a late claim pursuant to section 10 (6) of the Court of Claims Act.

. Houston (supra) has also been followed, and applied to filings other *1053 than notices of appeal, by the Fourth Circuit (Lewis v Richmond City Police Dept., 947 F2d 733 [1991]), the Seventh Circuit (Simmons v Ghent, 970 F2d 392 [1992]), the Eighth Circuit (Hamm v Moore, 984 F2d 890 [1992]); the Ninth Circuit (Friends of Payette v Horseshoe Bend Hydroelectric Co., 988 F2d 989 [1992]), and possibly other Federal courts.

. Pursuant to a policy of the Department of Correctional Services, sufficient funds will be advanced to cover postage for certified mail, return receipt requested, for service on the Attorney-General if the inmate cannot pay for such service himself and has used up his legal mail allowance.

. The State’s preanswer motion or answer must also apprise the claimant of similar alleged defects with respect to the notice of intention, but such notice will not occur usually within 40 days after that preliminary document is served. The Attorney-General’s decision to abandon the practice of sending receipt letters is, therefore, particularly regrettable with respect to the notice of intention.