**STATE of Utah, Plaintiff and Appellee,**

v.

**Terence L. PARKER, Defendant and Appellant.**

**No. 940735–CA.**

Court of Appeals of Utah.

April 10, 1997.

Terence Lee Parker, West Jordan, Pro Se.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant Terence L. Parker seeks reversal of our prior ruling dismissing his appeal for lack of jurisdiction because his notice of appeal was filed with the district court clerk more than thirty days after entry of judgment. After considering his petition for rehearing, we dismiss defendant's appeal.

## FACTS

Defendant pleaded guilty to attempted burglary. The trial court held the plea in abeyance pending defendant's compliance with certain conditions. Defendant failed to comply with one condition, and the trial court ruled that defendant had violated the terms of the plea-in-abeyance agreement and accepted defendant's guilty plea. Defendant was incarcerated at the Utah State Prison.

The trial court entered its judgment on October 25, 1994. Defendant dated his notice of appeal November 18, 1994, and certified that he mailed the notice through the prison mail on November 19, 1994. The district court clerk did not date stamp his notice of appeal until nine days later—November 28, 1994. With the notice of appeal,

defendant included a Motion for Extension dated November 19, 1994, which also was date stamped on November 28, but the trial court never acted on the motion.

Defendant timely filed with this court his Docketing Statement on December 21, 1994, and his brief on July 21, 1995. On September 13, 1995, the State moved, under Utah Rule of Appellate Procedure 10, to dismiss defendant's appeal for lack of jurisdiction because he filed his notice of appeal one day after the time limit.[1] This court dismissed defendant's appeal in an unpublished memorandum decision on October 19, 1995, concluding this court lacked jurisdiction to extend the time for filing a notice of appeal.

Defendant then filed a petition for rehearing, which this court granted. This court ordered the case remanded to the trial court for a ruling on defendant's timely motion to extend the time for appeal. On remand, the trial court denied defendant's motion to extend the time for appeal. Based on the trial court's denial of the motion, this court ordered plenary consideration of the issue now before us: Whether the "prison delivery rule" should be adopted and applied to interpret Rule 4 of the Utah Rules of Appellate Procedure, thereby making defendant's appeal timely.

### ANALYSIS

Defendant argues this court should not have dismissed his appeal as untimely because we should adopt the "prison delivery rule," articulated by the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), to interpret our state rules of appellate procedure. In response, the State argues we have already rejected the prison delivery rule in *State v. Palmer*, 777 P.2d 521 (Utah Ct.App.1989) (per curiam).

In *Palmer*, this court summarily dismissed, in a per curiam opinion, a pro se prisoner's appeal because his notice of appeal was filed more than thirty days after entry of judgment. *See id.* at 523 (per curiam). The *Palmer* court concluded "the notice of appeal was not timely filed under any plausible interpretation of our rules." *Id.* at 522 (per curiam). The court reasoned that Rule 4 provides that a notice of appeal must be "filed" with the trial court, and that "[t]o hold that filing in the trial court is complete upon mailing is inconsistent" with the plain language of Rule 4. *Id.* (per curiam). However, the *Palmer* court did not discuss nor mention *Houston*'s prison delivery rule. Therefore, we take this opportunity to specifically consider whether *Houston*'s prison delivery rule should be adopted in Utah.

In *Houston v. Lack*, 487 U.S. 266, 268–69, 108 S.Ct. 2379, 2381, 101 L.Ed.2d 245 (1988), a pro se prisoner sought appellate review of a federal district court judgment dismissing his pro se habeas corpus petition. The prisoner deposited his notice of appeal with prison authorities three days before the deadline, but the notice was not filed by the district court clerk until one day after the deadline. *See id.* The United States Supreme Court held that an incarcerated pro se prisoner's notice of appeal was timely filed when the prisoner delivered it to prison authorities for forwarding to the district court clerk within the thirty-day period required by Federal Rule of Appellate Procedure 4(a)(1). *See id.* At the time of *Houston*, Federal Rule of Appellate Procedure 4(a)(1) was nearly identical to the current version of Utah Rule of Appellate Procedure 4(a).[2] *See Houston*, 487 U.S. at 276, 108 S.Ct. at 2385.

Because *Houston* was an interpretation of the federal rules, we are not bound by its holding. However, most states have considered *Houston* to be persuasive authority. *See, e.g., Mayer v. State*, 184 Ariz. 242, 908

1. Defendant's notice of appeal was due on Friday, November 25, 1994, which makes the date his notice was filed, Monday, November 28, 1994, one day past the thirty-day limit provided by Utah Rule of Appellate Procedure 4.

2. Federal Rule of Appellate Procedure 4(a)(1) (amended 1993) provided:

In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from....

P.2d 56, 58 (Ct.App.1995); *Commonwealth v. Hartsgrove,* 407 Mass. 441, 553 N.E.2d 1299, 1302 (1990); *Hickey v. Oregon State Penitentiary,* 127 Or.App. 727, 874 P.2d 102, 105 (1994). Similarly, in construing other procedural rules, Utah courts have recognized that when the Utah rule "is essentially similar" to the federal rule of procedure, "in addition to applicable Utah cases, we look to the abundant federal experience in the area for guidance." *Landes v. Capital City Bank,* 795 P.2d 1127, 1130 (Utah 1990); *see also Miller v. Brocksmith,* 825 P.2d 690, 693 (Utah Ct. App.1992) (recognizing when a federal and state rule of procedure "are substantively identical, 'we freely refer to authorities which have interpreted the federal rule'" (quoting *Gold Standard, Inc. v. American Barrick Resources Corp.,* 805 P.2d 164, 168 (Utah 1990))); *State v. Pearson,* 818 P.2d 581, 583 (Utah Ct.App.1991) ("While this issue is one of first impression in this state, it has been addressed by the federal courts. We may look to federal cases in interpreting the rules when the Utah and federal rules are identical.").

Utah Rule of Appellate Procedure 4(a) provides:

> In a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal required by rule 3 *shall be filed with the clerk of the trial court within 30 days after date of entry of the judgment or order appealed from.*

(Emphasis added.)

The plain language of Rule 4 provides that an appellant must file his or her notice of appeal in the district court within thirty days. When the language of a rule or statute is unambiguous, we have consistently held that a court must follow its plain meaning. *See Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (" 'When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.' " (citation omitted)); *Bonham v. Mor-gan,* 788 P.2d 497, 500 (Utah 1989) (per curiam) ("Unambiguous language in the statute may not be interpreted to contradict its plain meaning."); *Allred v. Utah State Retirement Bd.,* 914 P.2d 1172, 1175 (Utah Ct. App.1996) (concluding that "[u]nless statutory language is 'unreasonably confused, inoperable, [ ]or in blatant contradiction to the express purpose of the statute,' this court applies the statute's literal wording" (citation omitted) (alteration in original)). Therefore, we decline to stretch the plain meaning of Rule 4 to encompass the prison delivery rule.

Our approach is consistent with that taken by other states faced with this issue. In *Talley v. Diesslin,* 908 P.2d 1173, 1175 (Colo. Ct.App.1995), the Colorado Court of Appeals refused to adopt the prison delivery rule in a case involving the timeliness of a prisoner's pro se complaint filed in district court, which sought review of a Department of Correction's disciplinary order. The court reasoned that if "the provision of the rule under consideration is unambiguous, we must apply the plain meaning rule of statutory construction and construe the rule as written." *Id.* Therefore, the court concluded the prison delivery rule was contrary to the plain language of its procedural rule. *See id.* Also, in *State ex rel. Tyler v. Alexander,* 52 Ohio St.3d 84, 555 N.E.2d 966, 967 (1990) (per curiam), the Ohio Supreme Court refused to adopt the prison delivery rule, concluding the plain language of " 'filed in the court from which the case is appealed' " could not be construed to mean " 'delivered to the prison mail room.' "

Nevertheless, the reasoning of *Houston* and the policies underlying the prison delivery rule are compelling. If we were in a position to write appellate procedural rules, we might well conclude a rule for pro se prisoners—such as the current Federal Rule of Appellate Procedure 4(c), which incorporates the prison delivery rule[3]—makes sense.

---

3. Federal Rule of Appellate Procedure 4 was amended in 1993 to reflect the prison delivery rule. Thus, the prison delivery rule is now firmly established in the federal system. *See* Fed. R.App. P. 4(c) ("If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing.").

In holding the filing was timely, the *Houston* Court emphasized that an incarcerated pro se defendant's lack of control over the filing of his or her notice of appeal is unique. The Court's language is worth quoting at length:

> Such prisoners cannot take steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30 day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least ... follow [the notice's] progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to prison authorities, he can

never be *sure* that it will ultimately get stamped "filed" on time.

*Houston,* 487 U.S. at 270–71, 108 S.Ct. at 2382.

The Court noted "the rationale for concluding that receipt constitutes filing in the ordinary civil case is that the appellant has no control over delays between the court clerk's receipt and formal filing of the notice." *Id.* at 273, 108 S.Ct. at 2383–84. In applying that rationale to the context of a pro se prisoner, the Court concluded the time of filing should be the moment at which the pro se prisoner loses control over and contact with the notice of appeal—i.e., at the moment of delivery to prison authorities. *See id.* at 276, 108 S.Ct. at 2385.

> Unskilled in law, unaided by counsel, and unable to leave the prison, [a pro se prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities.

*Id.* at 271, 108 S.Ct. at 2382–83.

Furthermore, the Court recognized that the rejection of the mailbox delivery rule in other contexts has been based, in part, on concerns of uncertainty over when filing occurred. *See id.* at 275, 108 S.Ct. at 2384. However, in the context of a pro se prisoner, there is not the same concern because a well-run prison will invariably keep a log of outgoing mail and/or date stamp the mail it receives from prisoners. Thus, the prison delivery rule is a "bright-line rule." 487 U.S. at 275, 108 S.Ct. at 2385.

We understand why many of our sister states have decided to adopt *Houston*'s interpretation of the federal rules to their own state rules of procedure.[4]

---

4. The states adopting the prison delivery rule include Alabama, Arizona, California, Florida, Louisiana, Massachusetts, Nevada, Oklahoma, and Oregon. *See Holland v. State,* 621 So.2d 373, 375 (Ala.Crim.App.1993); *Mayer v. State,* 184 Ariz. 242, 908 P.2d 56, 59 (Ct.App.1995); *In re Jordan,* 4 Cal.4th 116, 13 Cal.Rptr.2d 878, 887, 840 P.2d 983, 992 (1992); *Haag v. State,* 591 So.2d 614, 617 (Fla.1992); *Tatum v. Lynn,* 637 So.2d 796, 799 (La.Ct.App.1994); *Commonwealth v. Hartsgrove,* 407 Mass. 441, 553 N.E.2d 1299, 1302 (1990); *Kellogg v. Journal Communications,* 108 Nev. 474, 835 P.2d 12, 13 (1992)

(per curiam); *Woody v. State,* 833 P.2d 257, 259 (Okl.1992); *Hickey v. Oregon State Penitentiary,* 127 Or.App. 727, 874 P.2d 102, 104–05 (1994).

The states rejecting the prison delivery rule include Arkansas, Delaware, Montana, New York, Ohio, and Pennsylvania. *See Key v. State,* 297 Ark. 111, 759 S.W.2d 567, 568 (1988) (per curiam); *Carr v. State,* 554 A.2d 778, 780 (Del. 1989) (per curiam); *O'Rourke v. State,* 782 S.W.2d 808, 809 (Mo.Ct.App.1990) (per curiam); *Espinal v. State,* 159 Misc.2d 1051, 607 N.Y.S.2d 1008 (Ct.Cl.1993); *State ex rel. Tyler v. Alexander,*

However, we conclude adoption of such a rule exceeds our authority and should be left to our supreme court, which has the ultimate authority for drafting our rules of appellate procedure. *See Talley*, 908 P.2d at 1175 (concluding "authority to adopt rules relative to review of decisions pursuant to [Colorado rules of procedure] is the sole function of [the state's] supreme court"); *Turner v. Commonwealth*, 137 Pa.Cmwlth. 609, 587 A.2d 48, 49 (1991) ("Even if this Court wished to follow *Houston*, it has no authority to adopt a rule which is in direct contravention with [a state appellate rule], a rule promulgated by our own Pennsylvania Supreme Court. Any such revision of that rule would have to come from the court which promulgated it.").[5]

## CONCLUSION

We decline to adopt *Houston*'s prison delivery rule as it is not consistent with the plain language of Utah Rule of Appellate Procedure 4. Therefore, we affirm our prior ruling dismissing defendant's appeal for lack of jurisdiction.

---

52 Ohio St.3d 84, 555 N.E.2d 966, 967 (1990) (per curiam); *Turner v. Commonwealth*, 137 Pa. Cmwlth. 609, 587 A.2d 48, 49 (1991).

**5.** We note that we do not reach the issue of whether our strict application of Rule 4 violates a pro se prisoner's due process or equal protection rights because these issues have not been sufficiently briefed and the record before us precludes an adequate exploration of these impor-

tant issues. *See Gramlich v. Munsey*, 838 P.2d 1131, 1132 (Utah 1992); *State v. Yates*, 834 P.2d 599, 602 (Utah Ct.App.1992). However, we note that other courts have found application of similar appellate procedural rules violated pro se prisoners' equal protection rights in certain circumstances. *See People v. Slobodion*, 30 Cal.2d 362, 181 P.2d 868, 872 (1947); *Haag*, 591 So.2d at 617.