Kelly, C.J.
(concurring). I concur in the order remanding this case to the circuit court and directing that court to consider plaintiffs appeal of his assault conviction as an appeal of right. I write separately only to highlight the extraordinary delays that occurred in this case and the role that this Court should take in preventing such delays in future cases.
FACTS AND PROCEDURAL BACKGROUND
Plaintiff is an inmate in a state prison. He attempted an escape in 2003. Plaintiff kicked a corrections officer who prevented his escape. The escape attempt led to four misconduct charges. Plaintiff pleaded guilty of three charges, but denied the fourth, a charge of assault and battery of a corrections officer. Plaintiff asserted that he did not kick the officer intentionally, but was simply trying to break out of the officer’s grasp. A Department of Corrections (DOC) hearings officer found plaintiff guilty of the assault charge and later denied rehearing.
Under MCL 791.255, plaintiff had 60 days from the delivery or mailing of that denial of rehearing, until May 3, 2004, to file an application for direct review by the circuit court.[1] He delivered his application to prison officials on April 14, 2004. The prison records show that plaintiffs petition was placed in the outgoing mail the next day, April 15. But the Ingham Circuit Court did not date-stamp the application as received until May 10, 2004, ten days after the filing deadline.
The circuit court issued an order allowing plaintiff to resubmit his application within 21 days. Plaintiffs new deadline was August 4, 2004. He delivered his application to prison officials well in advance of *945 the deadline, on July 20. The prison records indicate that this application was placed in the outgoing mail on July 21. Again, however, the circuit court did not record the application as received until well after the deadline, on August 13, 2004, 25 days after plaintiff delivered it to prison officials.
This time, the circuit court entered an order dismissing plaintiff’s petition as untimely. Plaintiff sought delayed leave to appeal the order, but the Court of Appeals denied it. This Court denied leave to appeal on October 31, 2006.
Almost three full years after fifing his application for review of his assault conviction, plaintiff sought superintending control in the Ionia Circuit Court. That court dismissed the complaint, adopting the defendant’s reasoning that plaintiffs only remedy had been a direct appeal of right to the circuit court. The Court of Appeals affirmed the dismissal.
Nearly five years after plaintiff filed the initial appeal challenging his assault conviction by the DOC hearing officer, this Court is finally granting plaintiff his day in court. The outrageousness of such a lengthy delay is obvious.
THE PRISON-MAILBOX RULE
This case strongly demonstrates the need for this Court to adopt a prison-mailbox rule. I have repeatedly advocated the adoption of such a rule in the past.[2] Here, the five-year delay would have been prevented had plaintiffs petition been considered “filed” on the date he first handed it to prison authorities.[3] Fortunately, the Court recently opened an *946 administrative file on this issue and will soon be considering the merits of such a rule.[4]
CONCLUSION
I fully concur in the order remanding this case to the circuit court to grant plaintiff a direct appeal as of right from his assault conviction. This case represents an egregious violation of plaintiffs right to his day in court. This Court can prevent future such violations by adopting a *947 version of the prison-mailbox rule discussed in the United States Supreme Court’s opinion in Houston v Lack.[5] I once again call upon this Court to do so.

 MCL 791.255(2) provides:
Within 60 days after the date of delivery or mailing of notice of the decision on the motion or application for rehearing, if the motion or application is denied or within 60 days after the decision of the department or hearing officer on the rehearing, a prisoner aggrieved by a final decision or order may file an application for direct review in the circuit court in the county where the petitioner resides or in the circuit court of Ingham county.

 People v Calbert, 480 Mich 1146, 1147 (2008) (Kelly, J., dissenting from denial of leave to appeal); Pugh v Dep’t of Corrections, 475 Mich 852-853 (2006) (Kelly, J., dissenting from denial of leave to appeal).

 Justice CORElGAN’s concern that “[w]e can make an informed administrative decision concerning a potential mailbox rule only with more specific information concerning the reasons for delay in cases such as this one,” post at 947, misses the point. Certainly, it would be helpful to know the reasons for the delays in plaintiffs mailings in this case. However, a prison-mailbox rule is not intended to enable courts to identify the cause of fifing delays. Rather, it is intended to permit prisoners’ appeals to be heard if the necessary pleadings are put in the hands of prison authorities before the fifing deadline has expired. Granting plaintiff an appeal of his assault conviction is thus not "premature,” as Justice CORRIGAN asserts, because plaintiff did everything possible to get his paperwork to the court clerk on time. This simple fact makes the policy rationale behind the prison-mailbox rule applicable to this case, regardless of the cause of the delays.
My conclusion is consistent with the United States Supreme Court’s reasoning in Houston v Lack, 487 US 266 (1988). In that case, the inmate also “had done all that could reasonably be expected” to get his application filed on time. Id. at 270, quoting Fallen v United States, 378 US 139, *946 144 (1964). Therefore, as here, the policy behind adopting a prison-mailbox rule centers around the fact that “the moment at which pro se prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk.” Id. at 276.
Finally, Justice Corrigan’s reference to a possible third delay in plaintiffs mailings in support of her contention that a mailbox rule may be difficult to apply is misguided. First, the two delays in plaintiffs mail discussed in this concurrence were both substantiated by DOC Disbursement Authorization Forms. The date and time the documentation was placed in the outgoing mail is shown on the forms. It is without dispute that the third mailing cited by Justice CORRIGAN was timely. Hence, the form did not need to be included as part of plaintiffs filings. There is no reason to believe another DOC Disbursement Authorization Form is unavailable to show when plaintiffs notice to the Court of Appeals was actually placed in the outgoing mail. The supposed third delay is a distraction from the real issue and does not, as Justice Corrigan asserts, illustrate a situation "that would prevent the easy application of a mailbox rule for prison inmates.”

 Even if Justice Corrigan’s concerns were valid, I disagree that they should delay or prevent this Court from formulating a prison-mailbox rule and submitting it for public comment. I believe the potential problems Justice Corrigan’s dissenting statement references could adequately be identified and rectified through our administrative process. Approximately 20 states have adopted the rule in some form, see Anno: Application of “prison mailbox rule” by state courts under state statutory and common law, 29 ALR6th 237, § 4. I have found nothing to suggest that states that adopted a prison-mailbox rule have encountered any of the problems raised by Justice Corrigan. Rather, the trend in courts across the country has been toward expansion of their prison-mailbox rules. See, e.g., Sulik v Taney Co, Missouri, 316 F3d 813 (CA 8, 2003) (joining the other circuits that have considered the issue and holding that the prison-mailbox rule governs the determination of when a prisoner’s civil complaint has been filed).

 Houston v Lack, 487 US 266 (1988).