**George KNICKERBOCKER, Petitioner,**

v.

**Christopher ARTUZ, Superintendent, et al., Respondent.**

**No. 99 Civ 0576(CM)(MDF).**

United States District Court, S.D. New York.

March 13, 2002.

---

George Knickerbocker, Woodbourne, NY, pro se.

John J. Sergi, Assistant District Attorney, White Plains, NY, for respondent.

ORDER DENYING PETITIONER'S APPLICATION FOR AN EXTENSION OF TIME TO FILE NOTICE OF APPEAL

McMAHON, District Judge.

Petitioner's application for a writ of habeas corpus was denied by this Court. Judgment of dismissal was entered on January 17, 2001. Subsequently, Petitioner filed a notice of appeal, which was received by the Clerk of the Court for the Second Circuit (not the District Court) on February 21, 2001, thirty-five days after the entry of judgment, or five days after the last day for filing same pursuant to the Federal Rules of Appellate Procedure. The notice of appeal was dated and signed on February 12, 2001, twenty-six days after the entry of judgment. Petitioner, who

was incarcerated in Stormville, New York, could have filed it on that date simply by delivering the notice of appeal to the authorities at the prison in an envelope addressed to the Clerk of the Court. This is because a pro se prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk." *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), see also Fed. R.App. P. 4(c). However, Petitioner did not deliver the notice of appeal to the prison authorities. Instead, he sent it to his sister, Theresa, who in turn sent it to the Court of Appeals. Her affidavit of service states that she mailed the notice of appeal on February 14, 2001. It was received seven days later—too late to be timely.

Petitioner moved in the Court of Appeals for in forma pauperis status and also for a certificate of appealability (which had been denied by this Court). The Court of Appeals dismissed the appeal sua sponte and denied the motions as moot. Holding that the prison mailbox rule established in *Houston* does not apply where a pro se prisoner delivers his notice of appeal to someone outside the prison system for forwarding to the Court Clerk, *Knickerbocker v. Artuz,* Docket No. 01–2140, 271 F.3d 35 (2d Cir.2001), it remanded the case to this Court—the proper forum, pursuant to Fed. Rule App. P. 4(a)(5)(A)—for determination of whether certain "affidavits" filed in connection with Petitioner's Notice of Appeal "can reasonably be construed as a motion for an extension of time to file his notice of appeal pursuant to Fed. R.App. P. 4(a)(5)(A)."

The per curiam opinion asks that I consider petitioner's and his sister's "affidavits." The record before me does not contain two affidavits. The two documents referred to in the per curiam are an affirmation of mailing attached to Petitioner's notice of appeal, which is signed by Petitioner's sister, Theresa Knickerbocker, and the notice of appeal itself, which is signed by Petitioner but does not purport to be made under oath. I assume that they are the documents the Court of Appeals wishes me to construe.[1]

As to the precise question asked by the Court of Appeals in its opinion—whether it is reasonable or appropriate to consider Petitioner's Notice of Appeal and his sister's affidavit as a motion for an extension of time to file a notice of appeal—I hold that it is not.

 A motion is an application for relief addressed to a court. More precisely, it is, "A written or oral application requesting a court to make a specified ruling or order." *Black's Law Dictionary* 1031 (7th ed.1999). Theresa Knickerbocker's affirmation does not request any relief. It simply states that she mailed the Notice of Appeal to the Court of Appeals on February 14, 2001. It is a ministerial

---

1. Knickerbocker filed with the Court of Appeals an affirmation in support of his motion for in forma pauperis treatment and an affirmation of service of the two motions that the Court of Appeals denied as moot. These documents, both of which were made under oath, are not in the record before this Court, as those motions were properly addressed to the Court of Appeals in the first instance. Neither are they referred to in the Circuit's per curiam order. Nonetheless, I have obtained them through the good offices of the Clerk of the Court of Appeals, to see if they could possibly be construed as applications for extensions of time. They could not. Interestingly, the affirmation for in forma pauperis status was created two weeks before the Notice of Appeal, on January 27, 2001, even though it was not sent to the Court of Appeals until March 29, 2001. And the affirmation of service of the motions to the Court of Appeals was sworn to more than thirty days after the expiration of the time within which an appeal could be timely filed under Rule 4(a)(5)(A).

document, attached to the Notice of Appeal. In the ordinary course, it would not even be brought to the attention of a judge who could grant relief. Therefore, I do not see how it could possibly be construed as a motion.

■ Similarly, the Notice of Appeal is not a motion. The notice indicates an intention to seek relief—reversal of a lower court's decree—but it does not in and of itself request any relief, with respect to the time of its filing or otherwise.

As a matter of policy, it would be unwise to construe these sort of documents as motions. Doing so would open the door to a floodgate of litigation over whether ministerial papers that are routinely filed in the Clerk's office—documents that are ordinarily of no concern to judges, and that may not even be forwarded to chambers—should be parsed to see if circumstances warrant transforming them into sub silentio applications for relief from some procedural defect that cannot be cured. Both this Court and the Court of Appeals have recognized that pro se litigants must comply with the Federal Rules of Civil and Appellate Procedure, as well as with various technical requirements, such as filing deadlines and statutes of limitations, with which they ordinarily might not be familiar. While pro se litigants are entitled to some leeway in pleading, stretching the concept of a "motion" to encompass papers that are manifestly not motions in order to redress perceived inequities is more leeway than this Court is prepared to give.

I stress "perceived inequities," because in this particular case, there is no inequity to redress. In an affirmation filed with the Court following remand, Petitioner argues that the equities support construing these two documents as a motion for an extension of time, because he was unaware of the "limitations" of the prison mailbox rule (Affirmation of George Knickerbocker, dated December 17, 2001, at ¶ 7) and thus made a good faith mistake. However, on the facts now on record before me, Petitioner could not possibly have been under any misapprehension that he was complying with the prison mailbox rule, because no less an authority than the United States Supreme Court has squarely held that the procedure Petitioner followed—delivering the letter to prison officials to mail to his sister, who in turn mailed it to the Clerk of the Court[2]— "would not *under any theory* constitute a 'filing.'" *See Houston,* 487 U.S. at 273, 108 S.Ct. 2379; *see also Dison v. Whitley,* 20 F.3d 185, 187 (5th Cir.1994) (holding that the *Houston* exception is limited to filings with prison officials, over whom a prisoner has no control); *Wilder v. Chairman of the Cent. Classification Bd.,* 926 F.2d 367, 370 (4th Cir.1991) (finding that the *Houston* filing rule does not apply when a prisoner gives papers to a person other than the prison authorities). What *Houston* expressly refused to countenance is prejudicing prisoners for delays over which they have no control. 487 U.S. at 271, 108 S.Ct. 2379. Once Petitioner entrusted his filing to someone outside of the prison system, he no longer needed the protection of the *Houston* rule. He had control over his chosen agent (his sister). *See, e.g., Dison,* 20 F.3d at 187; *Wilder,* 926 F.2d at 370. He could have directed his sister to deliver the papers to Foley Square in person, or to send them by an overnight service or Express Mail, in order to ensure their timely delivery. The Supreme Court's view of the matter has been on the books for over thirteen years.

---

**2.** Ms. Knickerbocker mailed the notice of appeal to the Clerk of the wrong court—the Court of Appeals. However, it was deemed filed with the District Court on the day it was received by the Court of Appeals, notwithstanding this procedural error.

It would not only be unreasonable, but it also would be contrary to Supreme Court precedent to stretch the concept of what constitutes a "motion" in order to relieve Petitioner of the consequences of his own folly.[3]

And folly it was. In an affirmation filed with the Court on remand, Knickerbocker explains his "good cause"[4] for sending the notice of appeal to his sister as follows: At the time this Court's decision dismissing the petition was handed down, petitioner was awaiting transfer from Green Haven Correctional Facility to a different prison. He states, "In the past, and a general problematic area when being transferred from one facility to another, inmates often have their legal documents lost and or delayed. As petitioner was faced with a deadline, and knowing the actions of prison officials, petitioner thought it safer to mail his notice of appeal and application of a certificate of appealability to his sister to assure that the same was actually mailed to the court." (Id., ¶ 6).

Given the existence of the prison mail box rule, Petitioner's purported fear of loss of his papers was unreasonable. Assuming arguendo that Petitioner had been transferred from Green Haven in February 2001, Petitioner could have handed the guard the notice of appeal on his way out the door, and it would have been deemed filed, even if the officials at Green Haven "lost" it (as Petitioner "feared" they would) or held on to it for months, or even years, before transmitting it to the Court.

Such matters as delay in transmission are irrelevant once the prisoner gives the notice to the prison mail room. That has been the law since 1988, when *Houston* was decided; there was nothing unsettled about it at the time of the events in question.

However, Petitioner is careful not to aver that he was in fact in transit from Green Haven to his new prison last February, or even that his transfer was imminent. That is understandable, since records of the New York Department of Corrections indicate that Petitioner was not transferred from Green Haven until July 2, 2001—nearly six months after the events in issue. (Aff. of John Sergi in Opposition, filed January 9, 2002) Thus, Petitioner could not reasonably have entertained any apprehension that Green Haven officials would lose his papers during his forthcoming transfer—even if his unsupported accusation that prison officials routinely lose the papers of transferred inmates were in fact true. The fact that he was not in any imminent danger of transfer in February 2001 suggests to this Court that his "fears" were not only groundless, but manufactured out of whole cloth.

Petitioner had a sure route to a timely appeal—hand the notice to the Green Haven mail room, addressed to the Clerk of the Court. He did not take it. Instead he did precisely what the United States Supreme Court said he should not do. Petitioner may indeed have misunderstood the

---

**3.** I should note that the Court of Appeals was not aware that Petitioner had followed the precise procedure condemned in *Houston;* it was only when Petitioner filed his affirmation on remand that it became clear that he had mailed the notice to his sister—which necessarily means that he entrusted it to prison officials for transmission to the outside world.

**4.** Pursuant to Fed. R.App. P. 4(a)(5)(A), a motion for an extension of time to appeal must be supported by a showing of excusable neglect or good cause. Since there is no question of excusable neglect here—the Court of Appeals has already found that Petitioner "diligently tried to file his notice of appeal in a timely fashion"—Petitioner would have to show good cause for following the procedure he did in order to prevail.

"limitations" of the prison mailbox rule, as he avers. But even for prisoners, ignorance of a pronouncement of the United States Supreme Court is no excuse.

This constitutes the decision and order of the Court.