

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2005

# Harris v. Vaughn

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3345

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Harris v. Vaughn" (2005). *2005 Decisions.* Paper 1379.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1379

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-3345

———

EARL HARRIS,

Appellant

v.

DONALD VAUGHN; THE DISTRICT
ATTORNEY OF THE COUNTY OF
PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF
PENNSYLVANIA

———

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 00-6083)
District Judge:  The Honorable Eduardo C. Robreno

———

Argued January 14, 2005

Before: SCIRICA, <u>Chief Judge</u>, ROTH, *Circuit Judges*,
and IRENAS,* *Senior District Judge.*

(Filed: April 12, 2005)

———

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

Robert Little, Esquire (Argued)
515 Valley Street
Suite 170
Maplewood, NJ 07040

Counsel for Appellant

John W. Goldsborough (Argued)
Assistant District Attorney
Thomas W. Dolgenos
Chief, Federal Litigation
Ronald Eisenberg
Deputy District Attorney, Law Division
Arnold H. Gordon
First Assistant District Attorney
Lynne Abraham
Office of District Attorney
1421 Arch Street
Philadelphia, PA 19102

Counsel for Appellees

---

OPINION

---

IRENAS, *Senior United States District Judge.*

Earl Harris ("Harris") is currently serving a life sentence in Pennsylvania state prison. Presently before the Court is Harris's appeal of the District Court of the Eastern District of Pennsylvania's dismissal of his habeas petition. For the reasons set herein, we affirm the District Court's dismissal.

I.A.    After a bench trial before the Court of Common Pleas of Philadelphia County in September, 1992, Harris was convicted of second-degree murder, aggravated assault, two counts of robbery, criminal conspiracy, and possessing an instrument of crime.  His post-verdict motions were denied.  The Superior Court affirmed the convictions on a direct appeal challenging the sufficiency and weight of the evidence.  *Pennsylvania v. Harris*, 669 A.2d 409 (Pa. Super. Sept. 26, 1995) (table).  Harris did not file an allocatur petition in the Supreme Court of Pennsylvania. Therefore, the judgment became final on October 26, 1995, thirty days after the Superior Court affirmed the convictions. *See* PA. R. APP. P. 903(a) (notice of appeal must be filed within thirty days).

B.

On April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which instituted a set time frame in which state prisoners could file for habeas relief.  Under AEDPA, a prisoner has one year from the date of the final disposition of his case in state court to file a habeas petition. 28 U.S.C. § 2244(d)(1).  The statutory window to file may be tolled while a prisoner is seeking post-conviction relief or collateral review through the state courts.  28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any

3

period of limitation under this subsection.").

Recognizing the potential for harsh and unjust results in cases where the final disposition of the conviction occurred before the passage of AEDPA, the Third Circuit, like other circuits, has fashioned a special rule. For those prisoners whose convictions were finalized prior to the passage of AEDPA, the one year window would run from AEDPA's effective date, April 24, 1996. *See Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618-19 (3d Cir. 1998); *see also Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997).

Interestingly, although § 2244(d) defines with some precision when the one year period of limitation commences or when it is tolled, it does not define what kind of submission to the District Court constitutes "an application for a writ of habeas corpus" which would stop the limitation period from continuing to run. The core of the Respondents' argument is that mere receipt of an application by a District Court Clerk is not "an application" which would stop the one year clock. Rather, Respondents assert that such an application must be *properly* filed before measuring whether the limitation period has been exceeded.

C.

The final disposition of Harris's criminal conviction was prior to AEDPA's effective date. Therefore, the statutory window for Harris would remain open, absent any

4

tolling, until April 23, 1997.

On January 3, 1997, Harris tolled the limitation by filing for post-conviction relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541. On this date 254 days had already elapsed since April 24, 1996, AEDPA's effective date. The PCRA court denied his petition on the merits, and the Superior Court affirmed on June 1, 1999. On December 2, 1999, the Pennsylvania Supreme Court denied allowance of appeal. Harris had ninety days to apply to the Supreme Court for a writ of certiorari. 28 U.S.C. § 1257; SUP. CT. R. 13. He made no such application, and the judgment dismissing his PCRA petition became final on March 1, 2000, at which time the one year limitation period to file a federal habeas petition had 111 days remaining and would expire on June 20, 2000. *Cf. Kapral v. United States*, 166 F.3d 565, 571-75 (3d Cir. 1999).

D.

On December 1, 2000, more than five months after the one year AEDPA limitation period had expired, the District Court for the Eastern District of Pennsylvania received Harris's petition for writ of habeas corpus (the "Petition"). The habeas petition, filed pursuant to 28 U.S.C. § 2254, focused mainly on claims of ineffective assistance of counsel. Harris claimed that his counsel was ineffective in failing to litigate a motion to suppress his confession; failing to conduct a full and effective cross examination of the

5

Commonwealth's witnesses; and failing to investigate and interview someone who was in the vicinity of the crime scene when the crime occurred. On December 19, 2000, the district court ordered Harris to pay the filing fee[1] or submit an application to proceed in forma pauperis ("IFP") within thirty days. Neither had been submitted with the Petition. The district court did not review the Petition for timeliness at that juncture.[2] Harris did not comply with the Order, and with no payment or IFP application, the district court dismissed the Petition without prejudice on January 31, 2001.

Harris moved for a "reversal of order to dismiss" on March 2, 2001. He alleged that he had tried to comply with the Order on January 15, 2001 by filling out a cash slip in the amount of $5.00, payable to the Clerk of the Court, and handing it over to a prison official, who then delivered the cash slip to the business manager. Without checking his prison account balance, Harris assumed that the cash slip was processed and the filing fee was paid. On January 24, 2001, the cash slip was returned to Harris because his account did not have sufficient funds.

The record does not indicate, nor does Harris allege, that an application to proceed IFP was filed after it was determined that there were insufficient funds to pay the filing fee. Moreover, Harris does not claim to have obtained a cash slip for the filing fee on a later occasion. Instead, after a month had passed, he filed the above-mentioned motion

---

[1] The filing fee is $5.00. 28 U.S.C. § 1914(a).

[2] Indeed, it was not until Respondent answered the Petition on June 19, 2002, that the issue of timeliness was raised.

for a reversal of the Order of January 31, 2001. When filing the motion for reversal, Harris did not include an application to proceed IFP, nor did he include the filing fee. District Court Judge Eduardo Robreno denied the motion for reversal on March 23, 2001, because the court had yet to receive either the filing fee or an IFP application. A month later, on April 23, 2001, Harris filed a notice of appeal.[3]

By Order dated March 28, 2002, the Court of Appeals dismissed Harris's appeal for lack of appellate jurisdiction because the district court's dismissal was without prejudice and thus was not a final order. The Court of Appeals panel further noted that if Harris wished to proceed with his Petition, he should file a motion to proceed IFP in the District Court or pay the filing fee.

On April 24, 2002, the filing fee was paid. By Order dated April 29, 2002, and entered May 1, 2002, the case was ordered to be marked "reopened" by the Clerk of the District Court. The file was sent to Magistrate Judge James Mellinson for Report and Recommendation ("R&R"). Judge Mellinson ordered the Commonwealth to respond to the Petition on May 9, 2002.

By letter dated May 10, 2002, Harris moved to amend the Petition to include two additional claims. On May 29, 2002, the district court ordered the Commonwealth to respond to the motion to amend. On June 19, 2002, the Commonwealth submitted a

---

[3] The docket indicates that Harris filed an application to proceed IFP with his notice of appeal. His application was granted by Order dated May 24, 2001.

response to both the Petition and the motion to amend, in which it argued that the Petition was time-barred.[4] Judge Mellinson issued the R&R on June 28, 2002, in which he denied the Petition with prejudice for untimeliness.[5]

Harris's motion objecting to the R&R was entered on July 17, 2002. It was in this motion that Harris responded to the issue of timeliness for the first time. Harris claimed that he handed his Petition to a prison official, Gary Rockafella, on December 10, 1999.[6] To explain why the district court did not receive a copy of the Petition until December 1, 2000, almost a year later, Harris alleges that Mr. Rockafella delayed in mailing the Petition until November, 2000, at which time he forged Harris's signature and dated it November 28, 2000.[7] Harris seemed to be seeking an earlier "deemed" filing date,

---

[4] The record indicates that this point marks the first occasion that the issue of the Petition's timeliness under AEDPA was raised.

[5] The R&R rested on two main points: (1) when Harris's PCRA round of appeals ended, Harris had five months remaining to file a habeas petition, yet he waited almost a year before filing; and (2) Harris failed to pay his filing fee for seventeen months from the time he filed the habeas petition.

[6] A December 10, 1999, filing date might well be premature as the Pennsylvania Supreme Court had denied review of the PCRA judgment only eight days earlier, and his time to seek review by the United States Supreme Court still had seventy-two days remaining. Thus, his limitation period for seeking federal habeas review was still tolled.

[7] Harris claims that due to the large size of the envelope, he was unable to place his Petition in the mailbox and so he handed it to Mr. Rockafella for mailing. Mr. Rockafella, according to Harris, was to mail the Petition when he left the housing unit on his lunch break. Harris also claims that he signed his Petition on December 10, 1999 and that the signature on the Petition received by the Court "is not that of petitioner." (Mot. to Object to Magistrate's R&R, at p.1.).

possibly pursuant to the "mailbox rule"[8] or under equitable tolling.[9]  Respondents contend

that they "recently inquired of the prison" and learned that there is no record or log of

Harris handing the Petition to his counselor nor any "cash slip" request for postage during

that time period.  Respondents state that "Graterford prisoners know to submit their mail

to the mail room with a cash slip attached so that an official record may be made of the

mail, and so that the postage may be deducted from their accounts."  (Resp't Brief, at

p.14, n. 2.)

On July 30, 2002, Judge Robreno approved and adopted the R&R, despite Harris's

objections.  The Petition was dismissed with prejudice and a certificate of appealability

("COA") was not issued.  Harris filed, pro se, a notice of appeal on August 23, 2002.

On April 28, 2003 the Court of Appeals issued an order granting the request for a

COA.  The COA directed the parties to specifically address: "(1) whether the petition

---

[8]The mailbox rule accepts the date that the prisoner delivers his legal filing to prison authorities for mailing as the date of filing. *See Houston v. Lack*, 487 U.S. 266, 275 (1988) (case involving prisoner filing a notice of appeal); *see also* FED. R. APP. P. 4(c); R. GOVERNING SECTION 2254 CASES 3(d).

[9] Equitable tolling may be employed in cases where a pro se litigant has been "trapped" by harsh formalities, i.e. "when the principles of equity would make the right application of a limitation period unfair." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998).  Equitable tolling is only appropriate where the petitioner has been diligent in pursuing his claim, but due to extraordinary circumstances, he has been unable to meet the limitations statute.  For example, equitable tolling has been applied in situations where the delay was caused by judicial actions or omissions, government interference, mental incompetence, lack of notice, or actual innocence of the petitioner.  Equitable tolling is not available to the petitioner who neglects his case or ignores his window of opportunity.

should be deemed 'filed' on December 10, 1999, the date Petitioner claims he submitted

the petition to a prison official; November 28, 2000, the date on the petition; or on April

24, 2002, the date Petitioner paid his filing fee . . . .; and (2) if the petition should not be

deemed filed on December 10, 1999, then should the limitations period be equitably

tolled from December 10, 1999 to November 28, 2000, . . . ."

## II.

## A.

Assuming, without holding, that some combination of equitable tolling and the

mailbox rule could apply to revert the effective receipt of the Petition by the Court back

to a date within the AEDPA window,[10] the Court must still consider whether (i) the mere

fact of receipt by the clerk of a habeas petition within the one year time limit satisfies 28

U.S.C. § 2244(d)  or (ii) an order granting IFP status or the filing fee itself must

accompany a habeas  petition in order for that petition to be deemed filed for purposes of

computing the one year limitation.

Rule 3(a) of the Rules Governing Section 2254 Cases ("Section 2254 Rules")[11]

---

[10] Defendants vigorously argue that neither the mailbox rule nor equitable tolling apply to this case.

[11] Unless otherwise noted, all references to Section 2254 Rules shall be to the Rules which existed prior to December 1, 2004, when significant amendments became effective.  As now in force Rule 3(a) only requires that the petitioner submit the petition with either the filing fee or an application for IFP status and Rule 3(b) requires the District Court Clerk to file the petition even if it is in improper form (under the new version of Rule 2)

provides that a habeas petition must "also be accompanied by the filing fee prescribed by law unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis." The clerk of court is told in Rule 3(b) that "[u]pon receipt of the petition and the filing fee, or an order granting leave. . .to proceed in forma pauperis, . . .the clerk of the district court shall file the petition and enter it on the docket in his office."

The Section 2254 Rules might be read to require that Harris's Petition should not be deemed filed for purposes of computing the one year limitation period until the clerk's office receives both the petition and either the filing fee or an approved IFP application. However, the adoption of such a literal reading of those Rules might not fairly take into account the practical difficulties facing a prisoner conducting pro se litigation. *See Houston v. Lack*, 487 U.S. at 270-75 (interpreting the rules in a light favorable to pro se prisoners by applying the "mailbox rule" for determining the date of filing); *cf.* FED. R. CIV. P. 1 (the rules should be interpreted "and administered to secure the just, speedy and inexpensive determination of every action").

---

and even if not accompanied by a filing fee or IFP application. *See Advisory Committee Notes to 2004 Amendments.* Thus, the significance of the payment of the filing fee or the submission of an IFP application in determining when a habeas petition is timely filed for the purpose of computing the one year AEDPA limitation period may not be the same as it was prior to December 1, 2004. Rule 3(c), as amended, states that "the time for filing a petition is governed by 28 U.S.C. § 2244(d)," and Rule 3(d), as amended, generally implements the "mailbox rule" to determine the date of filing. However, nothing in the new Rules specifically deals with the effect on § 2244(d) of a petition filed under Rule 3(b) which is not in proper form or not accompanied by a filing fee or an IFP application, although the *Advisory Committee Notes* do refer to various cases which permit equitable tolling.

Indeed, the Clerk of the Eastern District of Pennsylvania did not strictly apply Rule 3 of the Section 2254 Rules. When Harris's Petition was received by the Clerk on December 1, 2000, it was filed and entered on the docket. Twenty days later the Court sent Petitioner a Notice and Order advising him that if he did not pay the filing fee or apply for IFP status within 30 days, his case would be dismissed without prejudice. On January 31, 2001, after the Notice and Order was ignored, the case was in fact dismissed.

Other courts have declined to literally apply the concept of "filing" in the pre-December 1, 2004, version of Rule 3(b) to the determination of whether a habeas petitioner has met the one year limitation period in § 2244(d). In *Jones v. Betrand*, 171 F.3d 499 (7th Cir. 1999), the Seventh Circuit faced the issue of timeliness in the context of a truly incomplete habeas petition, one that did not include payment or an IFP application within the statutory window. Jones, the petitioner mailed his pro se petition with prison officials (by placing it in a prison mailbox) on April 23, 1997, which was his last day to file before the statute of limitations ran. Shortly thereafter, Jones was advised that he failed to include the fee or an IFP application. Within two weeks, on May 7, 1997, the clerk's office received Jones's filing fee, along with an application to proceed IFP. The district court found that the filing date was the day the fee was received, May 7, 1997. The district court dismissed the petition as untimely despite the fact that it arrived prior to the close of the statute of limitations, because it was not "filed" until after the petitioner's window to file closed on April 23, 1997. *Id*. at 500.

The Seventh Circuit reversed, finding that, notwithstanding the filing provisions of

Rule 3(b) of the Section 2254 Rules, "for statute of limitations purposes, an inmate's petition for habeas relief need not be accompanied by the required filing fee or IFP application, so long as one or the other is sent within a reasonable time after the petition and there is no evidence of bad faith on Petitioner's part." *Id*. at 502; *see also Spotville v. Cain,* 149 F.3d 374, 375 (5th Cir. 1998);[12] *United States v. Williams*, 37 F. Supp 2d 1048 (N.D. Ill. 1998); *Bailey v. Gilmore*, 5 F. Supp. 2d 587, 589 (N.D. Ill. 1998); *Cardenas v. DeTella*, No. 97-3005, 1998 WL 708858 (N.D. Ill. Sept. 24, 1998); *Washington v. Gramley*, No. 97-3270, 1998 WL 171827, at *3 (N.D. Ill. Apr. 10, 1998); *cf. United States v. Gilmore*, 987 F. Supp. 677 (N.D. Ill. 1997) (habeas petition dismissed for bad faith in failure to include filing fee with petition where prison account showed ability to pay).

B.

We hold that under the version of Rule 3(b) in effect when this case arose, the date of filing for statute of limitations purposes is the date that the habeas petition is received by the court or by the appropriate prison official (if the mailbox rule applies),

---

[12] Later, in *Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002), the Fifth Circuit limited its holding in *Spotville*. The Fifth Circuit found that prisoners represented by counsel could exercise control over their legal documents and therefore should not be afforded the same degree of leniency as pro se prisoners and should not benefit from the mailbox rule. The Fifth Circuit held that the rule set forth in *Spotville*, that "'[t]he timeliness of [a] petition for purposes of application of the effective date of the AEDPA depends, not on a fee payment, but on when [the petitioner] delivered his papers to prison authorities for filing,'" will not apply to "prisoner litigants who are represented by counsel." *Id*. at 847 (quoting *Spotville*, 149 F.3d at 376). *Spotville* remains viable, however, as applied to pro se litigants.

regardless of whether payment or an IFP application is attached, as long as either follows within a reasonable time and there is no evidence of bad faith.

What constitutes a reasonable time will vary, thus requiring individual consideration of each case. In *Jones,* a two week delay was deemed reasonable. 171 F.3d at 499. In *Cardenas*, the court implicitly found the submission of the filing fee to be within a reasonable time, because it was submitted within the time period ordered by the court. 1998 WL 708858, at *3. Here, the fee went unpaid from December, 2000, the date the Petition was actually received by the Court, until April 24, 2002, the date the filing fee was paid. No IFP application was ever filed. We find in light of the circumstances surrounding the delay, the gap between the court's receipt of the Petition and its receipt of the fee is unreasonable.

Harris was on notice that a filing fee or an IFP application was required at the time he completed his application. The pre-printed standard habeas application form which Harris used included an advisement that the petition would be filed only after payment was received: "Upon receipt of a fee of $5.00, your petition will be filed if it is in proper order." The standard form also outlines how to seek permission to proceed IFP.

Harris was again informed of the filing requirements shortly after December 19, 2000, when he received the court Order directing him to pay the filing fee or submit an IFP application within 30 days.[13] Harris was put on notice not only by the language in the

---

[13] Harris did receive a copy of the Order, as he stated in a later motion that he tried to comply with it. His copy was somehow mislaid at a later time, because sometime in May

14

body of the Order, but also by the language in the area at the end of the Order.  There is a

section following the text of the Order that the petitioner can tear off and return to the

court.  The petitioner can indicate in that area either: "I want my motion to **PROCEED**.

Enclosed is five dollars (or an in forma pauperis application)." -or-  "I wish my motion be

**WITHDRAWN**."  There is a line below the two options for the petitioner to sign.  Harris

received this court-provided form with the Order of December 19, 2000, but did not

utilize it.

Harris allegedly filled out a cash slip on January 15, 2001, but when he learned

that he did not have sufficient funds, he did nothing further to comply with the Order.

Harris waited another month before filing a motion for reversal, but then did not submit

payment or an IFP application with that motion.  Harris continued to object and appeal

the dismissal of his Petition for more than a year before he finally paid the filing fee.

At each stage, Harris was notified that his case would be re-opened if he paid the

fee or submitted an IFP application.  And yet, he made minimal, if any, efforts to either

complete the IFP application or to pay the filing fee.  This is not a case where the

intervention of the courts or the prison prevented Harris from complying with the statute

and the court orders.  Rather, Harris knew of the requirements and was far less than

---

2002, Harris advised the District Court that he did not have a copy of the December 19,
2000 Order.  On May 9, 2002, the Magistrate Judge ordered the Clerk of the Court to
provide Petitioner with a copy of the Order.

diligent in complying with the rules.[14]

IV.

For the reasons set forth above, under the provisions of Rule 3 of the Section 2254 Rules, as they existed prior to December 1, 2004, the District Court's dismissal of his § 2254 Petition for failure to timely pay the filing fee is hereby affirmed. The Court makes no determination of the impact of the recent amendments to Rule 3 on the holding in this case.

---

[14] Respondents raise the issue of bad faith in their papers, but it need not be addressed because, under these circumstances, the delay has already been determined to be unreasonable. *Cf. Barnes v. Briley*, 294 F. Supp. 2d 931 (N.D. Ill. 2003) (interpreting the *Jones* condition that there be no evidence of bad faith when determining that a petition lacking an IFP application or the filing fee is timely).