# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 10, 2009

136728

PATRICK KINNEY,
        Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS,
        Defendant-Appellee.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 136728
COA: 277809
Ionia CC: 06-025197-AS

On order of the Court, the application for leave to appeal the May 29, 2008 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), we VACATE the judgment of the Court of Appeals and we REMAND this case to the Ingham Circuit Court. In light of the unique procedural facts of this case, the circuit court shall afford the plaintiff direct review of his challenge to the defendant's hearings officer's decision, as presented in File No. 04-001149-AA.

KELLY, C.J. (*concurring*).

I concur in the order remanding this case to the circuit court and directing that court to consider plaintiff's appeal of his assault conviction as an appeal of right. I write separately only to highlight the extraordinary delays that occurred in this case and the role that this Court should take in preventing such delays in future cases.

FACTS AND PROCEDURAL BACKGROUND

Plaintiff is an inmate in a state prison. He attempted an escape in 2003. Plaintiff kicked a corrections officer who prevented his escape. The escape attempt led to four misconduct charges. Plaintiff pleaded guilty of three charges, but denied the fourth, a charge of assault and battery of a corrections officer. Plaintiff asserted that he did not kick the officer intentionally, but was simply trying to break out of the officer's grasp. A Department of Corrections (DOC) hearings officer found plaintiff guilty of the assault charge and later denied rehearing.

Under MCL 791.255, plaintiff had 60 days from the delivery or mailing of that denial of rehearing, until May 3, 2004, to file an application for direct review by the circuit court.[1] He delivered his application to prison officials on April 14, 2004. The prison records show that plaintiff's petition was placed in the outgoing mail the next day, April 15. But the Ingham Circuit Court did not date-stamp the application as received until May 10, 2004, ten days *after* the filing deadline.

The circuit court issued an order allowing plaintiff to resubmit his application within 21 days. Plaintiff's new deadline was August 4, 2004. He delivered his application to prison officials well in advance of the deadline, on July 20. The prison records indicate that this application was placed in the outgoing mail on July 21. Again, however, the circuit court did not record the application as received until well after the deadline, on August 13, 2004, 25 days after plaintiff delivered it to prison officials.

This time, the circuit court entered an order dismissing plaintiff's petition as untimely. Plaintiff sought delayed leave to appeal the order, but the Court of Appeals denied it. This Court denied leave to appeal on October 31, 2006.

Almost three full years after filing his application for review of his assault conviction, plaintiff sought superintending control in the Ionia Circuit Court. That court dismissed the complaint, adopting the defendant's reasoning that plaintiff's only remedy had been a direct appeal of right to the circuit court. The Court of Appeals affirmed the dismissal.

Nearly five years after plaintiff filed the initial appeal challenging his assault conviction by the DOC hearing officer, this Court is finally granting plaintiff his day in court. The outrageousness of such a lengthy delay is obvious.

THE PRISON-MAILBOX RULE

This case strongly demonstrates the need for this Court to adopt a prison-mailbox rule. I have repeatedly advocated the adoption of such a rule in the past.[2] Here, the five-

---

[1] MCL 791.255(2) provides:

> Within 60 days after the date of delivery or mailing of notice of the decision on the motion or application for rehearing, if the motion or application is denied or within 60 days after the decision of the department or hearing officer on the rehearing, a prisoner aggrieved by a final decision or order may file an application for direct review in the circuit court in the county where the petitioner resides or in the circuit court of Ingham county.

[2] *People v Calbert*, 480 Mich 1146, 1147 (2008) (Kelly, J., dissenting from denial of

year delay would have been prevented had plaintiff's petition been considered "filed" on the date he first handed it to prison authorities.[3] Fortunately, the Court recently opened an administrative file on this issue and will soon be considering the merits of such a rule.[4]

leave to appeal); *Pugh v Dep't of Corrections*, 475 Mich 852-853 (2006) (Kelly, J., dissenting from denial of leave to appeal).

[3] Justice Corrigan's concern that "[w]e can make an informed administrative decision concerning a potential mailbox rule only with more specific information concerning the reasons for delay in cases such as this one" misses the point. Certainly, it would be helpful to know the reasons for the delays in plaintiff's mailings in this case. However, a prison-mailbox rule is not intended to enable courts to identify the cause of filing delays. Rather, it is intended to permit prisoners' appeals to be heard if the necessary pleadings are put in the hands of prison authorities before the filing deadline has expired. Granting plaintiff an appeal of his assault conviction is thus not "premature," as Justice Corrigan asserts, because plaintiff did everything possible to get his paperwork to the court clerk on time. This simple fact makes the policy rationale behind the prison-mailbox rule applicable to this case, regardless of the cause of the delays.

My conclusion is consistent with the United States Supreme Court's reasoning in *Houston v Lack*, 487 US 266 (1988) . In that case, the inmate also "had done all that could reasonably be expected" to get his application filed on time. *Id.* at 270, quoting *Fallen v United States*, 378 US 139, 144 (1964). Therefore, as here, the policy behind adopting a prison-mailbox rule centers around the fact that "the moment at which *pro se* prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk." *Id.* at 275.

Finally, Justice Corrigan's reference to a possible third delay in plaintiff's mailings in support of her contention that a mailbox rule may be difficult to apply is misguided. First, the two delays in plaintiff's mail discussed in this concurrence were both substantiated by DOC Disbursement Authorization Forms. The date and time the documentation was placed in the outgoing mail is shown on the forms. It is without dispute that the third mailing cited by Justice Corrigan was timely. Hence, the form did not need to be included as part of plaintiff's filings. There is no reason to believe another DOC Disbursement Authorization Form is unavailable to show when plaintiff's notice to the Court of Appeals was actually placed in the outgoing mail. The supposed third delay is a distraction from the real issue and does not, as Justice Corrigan asserts, illustrate a situation "that would prevent the easy application of a mailbox rule for prison inmates."

[4] Even if Justice Corrigan's concerns were valid, I disagree that they should delay or prevent this Court from formulating a prison-mailbox rule and submitting it for public comment. I believe the potential problems Justice Corrigan's dissenting statement references could adequately be identified and rectified through our administrative process. Approximately 20 states have adopted the rule in some form, see anno: Application of "prison mailbox rule" by state courts under state statutory and common

CONCLUSION

I fully concur in the order remanding this case to the circuit court to grant plaintiff a direct appeal as of right from his assault conviction. This case represents an egregious violation of plaintiff's right to his day in court. This Court can prevent future such violations by adopting a version of the prison-mailbox rule discussed in the United States Supreme Court's opinion in *Houston v Lack*.[5] I once again call upon this Court to do so.

CORRIGAN, J. (*dissenting*).

I would remand this case to the trial court and order the Department of Corrections (MDOC) to show cause for the consistent delays in transmitting the plaintiff inmate's legal mail to the courts. First, the delays may have originated from the MDOC's Baraga Maximum Correctional Facility, where plaintiff is housed. The MDOC is a party both to this suit and to the underlying suit in which plaintiff petitioned for judicial review of an MDOC hearing officer's decision. The MDOC is also the beneficiary of the delays, which resulted in the dismissal of plaintiff's petition in the underlying suit. Accordingly, it is appropriate to order the MDOC to explain the delays at a show cause hearing. Second, until the court has additional facts concerning the cause of the delays, providing relief to plaintiff is premature. Finally, the courts will benefit from explicit fact-finding by the trial court in this case. Even if the delays originated with the MDOC, their causes remain a mystery. For example, in addition to the delays in mail to the trial court noted by Chief Justice Kelly, the record contains a notice mailed to the Court of Appeals and received by that court on June 23, 2008. The meter stamp from Baraga, Michigan, on the face of the envelope suggests that the notice was mailed over a month earlier, on May 19, 2008. Yet the *back* of the envelope reveals a second meter stamp dated June 19, 2008. Accordingly, it is not clear whether this particular piece of mail was delayed at all; if its timeliness was at issue, the unexplained multiple meter stamps presumably would prevent the easy application of a mailbox rule for prison inmates, as described by Chief Justice Kelly, for this piece of mail. Thus, fact-finding in this case concerning the causes

---

law, 29 ALR 6th 237 § 4. I have found nothing to suggest that states that adopted a prison-mailbox rule have encountered any of the problems raised by Justice Corrigan. Rather, the trend in courts across the country has been toward expansion of their prison-mailbox rules. See, e.g., *Sulik v Taney Co, Missouri*, 316 F3d 813 (CA 8, 2003) (joining the other circuits that have considered the issue and holding that the prison-mailbox rule governs the determination of when a prisoner's civil complaint has been filed).

[5] *Houston v Lack*, 487 US 266 (1988).

for the delays to plaintiff's mail will shed light on whether a mailbox rule is necessary and desirable. We can make an informed administrative decision concerning a potential mailbox rule only with more specific information concerning the reasons for delay in cases such as this one.

YOUNG, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 10, 2009

_Corbin R. Davis_
Clerk