Antonio HOWARD, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 91724.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 28, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 15, 2009.

Application for Transfer Denied
Sept. 1, 2009.

G. Gregory Mermelstein, Columbia, MO,
for Appellant.

Christopher Koster, Karen L. Kramer,
Assistant Attorney General, Jefferson
City, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Antonio Howard ("Movant") appeals the
motion court's dismissal of his pro se Rule
29.15 motion for post-conviction relief
("motion") without an evidentiary hearing.
We reverse.

## I. BACKGROUND

Movant was convicted in the Circuit
Court of St. Louis City ("motion court") of
three counts of first-degree robbery, two
counts of attempted first-degree robbery,
and five counts of armed criminal action.
His aggregated sentence totaled 240 years.
This Court confirmed his conviction and
sentences on appeal and issued a mandate
on November 15, 2006. *State v. Howard,*
204 S.W.3d 327 (Mo.App. E.D.2006).

Missouri Supreme Court Rule 29.15(b)
required Movant to file his motion within
90 days of this Court's issuing the man-
date. Therefore, Movant had to file by
February 13, 2007. The St. Louis City
Clerk's Office stamped his motion as filed
on March 14, 2007. The State moved to
dismiss Movant's motion as untimely filed,
and the motion court granted that motion.

The history of Movant's motion is as
follows. On January 24, 2007, Movant
gave his pro se motion to a guard at
Southeast Missouri Correctional Center
("SECC") where he was housed. Pursu-
ant to SECC procedures, Movant had
placed the motion in an envelope and in-
cluded what he believed to be the correct
amount of postage. He wrote, "Please
Certify and Return Receipt" on the out-
side of the envelope, indicating the envel-
ope should be sent via certified mail. The
SECC mailroom stamped the motion as
"Received January 25, 2007."

Movant addressed the envelope to "St.
Louis City Circuit Court, Office of the
Clerk, Civil Courts Building, 714 Market
Street, St. Louis, Missouri, 63101." The
motion court is located at 10 North Tuck-
er. However, "N. 10th Tucker" is visibly
marked through before the Market Street
address. Movant indicated that he
marked out Tucker Street because another
inmate had told him that Market Street
was the correct address.

Donna Julian ("Julian") is a mailroom
clerk at SECC who submitted an affidavit
in this case. For certified mail packages,
Julian stated that it is SECC mailroom
standard operating procedure to fill out
the green certified mailing and signature
card and to record the package in the
mailroom log. Only certified mail is
logged into the log; regular mail is not. It
is also standard procedure for the mail-
room to notify an inmate prior to mailing if
his package has incorrect postage so that

it can be corrected. Movant's envelope was not entered into the certified mail log on January 25, 2007. According to Julian, the absence of an entry in the log indicates that Movant's envelope was sent via regular mail. The mailroom did not alert Movant to any problems with his envelope, postage or otherwise, prior to mailing it.

Movant's envelope was returned to the SECC mailroom on or about March 8, 2007. The envelope did not indicate the reason for return, but Julian surmised it was either due to incorrect postage or the Post Office's realization that the envelope should have been sent via certified mail because "Please Certify and Return Receipt" was written on the outside.

The SECC mailroom stamped the envelope "Received March 8, 2007." Julian then filled out a green certified mailing card, logged it into the certified mail logbook, and re-sent the envelope via certified mail to the Market Street address that same day. The SECC mailroom subsequently received the certified mailing card from the Post Office which confirmed that the envelope had reached its recipient. Movant, however, had been relocated from SECC and as of February 6, 2007 was being housed at Jefferson City Correctional Center ("Jeff City"). Julian forwarded the certified mailing card to Movant at Jeff City.

Movant received no indication there was a problem with his envelope until he reached Jeff City. Sometime after February 6, 2007 (and presumably after March 8, 2007) while he was housed at Jeff City, Movant was told his package needed additional postage. Movant provided the additional postage and the next information he received about the envelope was the forwarded certified mail card from Julian at SECC.

Movant's motion was not stamped as filed in the motion court until March 14, 2007, almost thirty days after the ninety-day deadline. The motion court dismissed his motion as untimely. Movant appeals.

## II. DISCUSSION

In his first point on appeal, Movant argues that the motion court erred in dismissing his motion as untimely because it should have been deemed timely filed under the unique circumstances of this case. We agree.

Our review of a motion court's denial of a motion for post-conviction relief is limited to whether that action was clearly erroneous. *Goodwin v. State*, 191 S.W.3d 20, 26 (Mo. banc 2006). A judgment is clearly erroneous when, in light of the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.* The motion court's findings are presumed correct. *Id.*

The time limitations contained in Rule 29.15 are valid and mandatory. *Spells v. State*, 213 S.W.3d 700, 701 (Mo.App. W.D. 2007). "An untimely motion deprives the motion court of jurisdiction, and the court must dismiss the motion even if not requested to do so by the state." *Id.* (quoting *Matchett v. State*, 119 S.W.3d 558, 559 (Mo.App. S.D.2003)).

Despite the well-established time limitations, a few Missouri cases have permitted motion courts to reopen otherwise final post-conviction cases in a limited set of circumstances. According to a recent Missouri Supreme Court decision, "our courts have found an improper filing, caused by circumstances beyond the control of the movant, justified a late receipt of the motion by the proper court." *McFadden v. State*, 256 S.W.3d 103, 108 (Mo. banc 2008).

The movant in *Nicholson v. State*, 151 S.W.3d 369 (Mo. banc 2004) timely filed his pro se motion for post-conviction relief in the wrong venue. *Id.* at 370. The court

forwarded the motion to the correct venue, but it was not received and filed until two days after the ninety-day deadline had passed. *Id.* The *Nicholson* Court held that the motion court should have allowed the movant's motion, despite its being delinquent. *Id.* at 371. While the Court utilized the general rules of civil procedure governing transfer in order to reach its decision, it also discussed the "practical implications of holding otherwise. An incarcerated person seeking post-conviction relief must prepare and file his or her motion only 'with such help as he can obtain within the prison walls or the prison system.'" *Id.* (quoting *Johnson v. Avery,* 393 U.S. 483, 488–9, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)).

In *Spells v. State,* the movant's pro se post-conviction motion did not reach the court in time because he had mailed the motion to the wrong P.O. Box. *Spells,* 213 S.W.3d at 702 (Mo.App. W.D.2007). Unbeknownst to the movant, the court had changed its P.O. Box number since he had filed his direct appeal, and the forwarding order had expired. *Id.* The movant mailed his motion a second time, this time to the new P.O. Box, and it was filed seven days late. *Id.* at 701. The Western District cited *Nicholson* and the spirit of Rule 29.15 in holding that the motion court should have entertained the motion. *Id.* at 702. The Court eschewed a mechanical application of the Rule and focused on the fact that the movant did not intend to cause delay, and had made only an honest, minor clerical mistake in filing his pro se motion. *Id.* at 701.

Most recently, in *McFadden v. State,* the Missouri Supreme Court authorized the motion court to reopen a final post-conviction motion. 256 S.W.3d 103 (Mo. banc 2008). Per the advice of his counsel, McFadden had given his pro se post-conviction motion directly to his attorney thirteen days before the filing deadline so that she could hand-file it before the due date. *Id.* at 105. His attorney, however, neglected to file the motion until one day after the ninety-day deadline had expired. *Id.* The *McFadden* Court held that the motion court should have allowed the motion. *Id.* at 109. They found that counsel's conduct constituted abandonment, and that McFadden was "free of responsibility for the failure to comply with the requirements of the rule." *Id.* (quoting *Sanders v. State,* 807 S.W.2d 493, 495 (Mo. banc 1991)). The Court likened McFadden to the movants in *Nicholson* and *Spells* in that he had taken all the necessary steps to seek timely review under Rule 29.15. *McFadden,* 256 S.W.3d at 109.

We believe Movant's case presents a rare set of circumstances similar to those presented in *Spells, Nicholson,* and *McFadden.* Movant delivered his pro se motion to the guards at SECC on January 24, 2007, a full twenty days before the filing deadline, and requested that it be delivered via certified mail. The motion court found it undisputed that Movant's envelope had not been sent via certified mail on January 25, even though it was standard operating procedure for the SECC mailroom to prepare the certified mail forms in all such cases.

It is also undisputed that no party is exactly certain why Movant's envelope was returned. According to Julian it was for one of two reasons, the first of which concerns SECC's failure to send the envelope via certified mail. Julian stated that the post office might have returned the envelope because: (1) the "Please Certify and Return Receipt" that Movant had written on the outside alerted them that it *should* have been sent via certified mail; or (2) it did not have sufficient postage for a certified letter (which Julian indicated

was unlikely given that there was no certified mail sticker affixed to the envelope).

Julian also stated that the envelope may have been returned for incorrect postage. Since inmates have no means of independently verifying correct postage amounts, it is SECC mailroom standard procedure to give notice of insufficient postage *prior to mailing*. The SECC mailroom did not notify Movant of insufficient postage prior to mailing his envelope.

Both of the aforementioned scenarios, namely SECC's failure to send Movant's envelope via certified mail, despite his request that they do so, and their failure to alert him to insufficient postage, constitute circumstances beyond Movant's control. They place Movant in the same category as the *McFadden* movant, who, having timely fulfilled all of his obligations, was dependent upon his attorney to file his motion before the deadline.

Finally, the motion court found that Movant's envelope could have been returned for an incorrect address; Market Street as opposed to Tucker Street. However, the motion court discredited this explanation by noting that the envelope was delivered on the second attempt when it still bore the incorrect Market Street address. We further note that the motion court is a prominent building in downtown St. Louis, and is located at the intersection of Market and Tucker. Given all these factors, we do not believe that Movant's envelope was returned due to an incorrect address.[1]

Rule 29.15 is designed to avoid delay in processing prisoners' claims and to prevent the litigation of stale claims. *Spells*, 213 S.W.3d at 702. Like the movants in *Spells*, *Nicholson*, and *McFadden*, there is no indication that Movant intended to cause delay.

It is not clear exactly why Movant's motion was lost in the postal system for approximately five weeks and subsequently returned to SECC. At its most egregious, Movant's conduct in this case amounted to an honest and minor clerical mistake, which in all likelihood did not contribute to the delay. However, for the reasons discussed in this opinion, we believe that Movant's motion was delinquent through no fault of his own. The reality is that pro se prisoners "cannot take the steps other litigants can take … to ensure that the court clerk receives and stamps their notices of appeal before the … deadline." *Spells*, 213 S.W.3d at 701–2 (quoting *Houston v. Lack*, 487 U.S. 266, 270–1, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). Based on the limited set of circumstances presented in this case, we believe that the motion court clearly erred in dismissing Movant's motion. Point granted.

### III. CONCLUSION

The judgment is reversed.

LAWRENCE E. MOONEY and GEORGE W. DRAPER III, JJ., concur.

---

1. Even if that were the case, that error would have amounted to nothing more than an "honest, minor clerical mistake in filing his pro se motion," which both *Spells* and *Nicholson* excused.