IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2011

## NANCY L. BLUE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Haywood County**
**No. 5797     Clayburn Peeples, Judge**

---

**No. W2010-02526-CCA-R3-PC  - Filed June 29, 2011**

---

A jury convicted the Petitioner, Nancy L. Blue, of two counts of rape of a child and two counts of incest.  On direct appeal, this Court affirmed her convictions but modified her sentences.  See State v. Nancy Blue, No. W2008-00187-CCA-R3-CD, 2009 WL 1097450, at *1 (Tenn. Crim. App., Jackson, Apr. 23, 2009), perm. to appeal denied, (Tenn. Sept. 28, 2009).  The Petitioner filed a pro se petition for post-conviction relief; however, the post-conviction court granted the State's motion to dismiss, finding that the petition was not timely filed.  The Petitioner alleges that both prison notaries were unavailable for several days preceding the date that her petition was due and, because of their absence, she was not able to get her petition to the appropriate prison authorities for mailing until the day after the one-year statute of limitations ran.  After our review, we remand to the post-conviction court for an evidentiary hearing to determine whether sufficient evidence exists to warrant tolling the statute of limitations for due process concerns and whether the Petitioner timely filed her petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Nancy L. Blue, Appellant, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Garry Brown, District Attorney General; and Edward L. Hardister, Assistant District Attorney General, for the appellee(s), State of Tennessee.

**OPINION**

**Factual Background**

In the Petitioner's direct appeal, this Court summarized the underlying facts as follows:

The [Petitioner's] convictions arose from reports that she sexually abused L.R. and R.B., her two oldest sons. The indictments allege a wide period of time during which the [Petitioner] committed the rape of a child offenses—January 1, 1999 until April 4, 2005 for L.R. and January 1, 1999 until March 9, 2004 for R.B.[] The State's proof at trial consiste[d] solely of the testimony of the victims. The [Petitioner] presented no proof.

L.R., fifteen years old at the time of trial, testified that his mother began "sexually raping" him at the age of seven with the last incident occurring sometime shortly after his thirteenth birthday on April 5, 2005, but before the end of the school year. He stated that his mother would often perform oral sex on him and force him to perform oral sex on her. He testified that he had penile intercourse with his mother also. He recalled that his mother also raped his older brother, R.B., but not as often. He testified that his mother raped him two to four times each month and that he had lost count of how many times it had occurred. L.R. initially did not realize it was wrong; once when he told the [Petitioner] he did not want to participate, she counted to three and threatened to whip him if he did not obey her. He stated that he often saw his mother having sex with her boyfriends and that she had watched pornographic videos with him and his brother. He admitted that he reported the abuse to his grandmother on December 19, 2005, after his mother threatened to whip him about some jewelry she accused him of stealing. However, L.R. explained that he wanted to move out of the [Petitioner's] house because "I didn't like her. . . . Me and my brothers made a team and we cared for our little brother and we stayed in the house most of the time, and I just got tired of it and I didn't want to live with her anymore. . . . After that whipping I kn[e]w that it was going to happen over and over again and that she was going to rape me over and over again even if—even after I said I didn't want to do it." L.R. also testified that he heard the [Petitioner] admit the abuse to his grandmother and aunt.

R.B., sixteen years old at the time of trial, testified that he had penile intercourse with his mother. He also stated that she performed oral sex on him and forced him to perform oral sex on her. He recalled that the abuse began

-2-

when he was nine or ten years old.  He stated that they had sex two or three times.  The abuse stopped when he and his brother told their grandmother.

State v. Nancy Blue, No. W2008-00187-CCA-R3-CD, 2009 WL 1097450, at *1 (Tenn. Crim. App., Jackson, Apr. 23, 2009), perm. to appeal denied (Tenn. Sept. 28, 2009) (footnote omitted).

On September 29, 2010, the Petitioner filed a petition for post-conviction relief, alleging that she was denied effective assistance of counsel, that the prosecution failed to disclose favorable evidence to her, and that she had newly discovered evidence.  The State filed a motion to dismiss on October 12, 2010,  alleging the petition was time-barred because it was filed one day after the one-year statute of limitations had run.

On October 22, 2010,[1] the Petitioner filed a response to the State's motion and attached two notarized letters that explained that her petition was late because neither of the prison notaries worked the week of September 20-27, 2010.  The letter from Brandy Driscoll, a notary public at the Tennessee Prison for Women, states, in pertinent part, as follows:

> It appears that Ms. Blue was late in submitting dated legal paperwork to your office.  It was a requirement that this paperwork be notarized.  The delay in the notary was not due to any action by Ms. Blue.  As you are aware, Ms. Blue is currently incarcerated and is at the mercy of the institution for such services as notary.  Unfortunately, Ms. Blue did not have access to this service, d[ue] to both available notaries being out the week of September 13-17th and again from September 20-27th of 2010 (due to training and family emergencies), leaving Ms. Blue no other option th[a]n to wait for one of the notaries to return.  I was finally able to address Ms. Blue's issue on the afternoon of September 28th, making the receiving date for the paperwork past the deadline.  This situation has never been in issue in the past.  This was the first incident where neither notary was available for more than 24 hours.

The second letter the Petitioner attached to her response was from Phyllis Hill, the Petitioner's VOE[2] instructor.  The letter from Ms. Hill states, "I can attest that on the dates

---

[1]  The date stamped on the filing that is included in the technical record is October 22, 2010.  The envelope, in which the Petitioner's response to the State's motion to dismiss was mailed, is not included in the appellate record and, therefore, we do not know when she delivered this filing to the appropriate prison authorities for mailing.

[2]  The letter does not state what "VOE" stands for.

of September 23, 2010 thru September 27, 2010; there was no one present to notarize documents. The first available notary returned to work on September 28, 2010."

Without conducting an evidentiary hearing, the post-conviction court granted the State's motion to dismiss the Petitioner's petition for post-conviction relief. In its order, the post-conviction court stated as follows:

> In this cause it appeared to the [c]ourt that the above-named [Petitioner] filed a Petition for Post Conviction Relief on September 29, 2010, upon delivering the Petition for the mailing with the prison authorities. [The Petitioner's] convictions in this cause are dated June 20, 2007. Final action was taken on the [Petitioner's] cases on September 28, 2009, when her permission to appeal was denied by the Tennessee Supreme Court. No further proceedings were had in this matter until the Petition for Post Conviction Relief was filed. It therefore appears that the filing of the Petition for Post Conviction Relief was outside the limitations period and that this matter should be dismissed without hearing.

It is from this order of dismissal that the Petitioner now appeals.

**Analysis**

In this appeal, the Petitioner contends that the post-conviction court erred by dismissing her petition. Specifically, she appears to be arguing that the statute of limitations should be tolled because neither one of the prison notaries were available to notarize the Petitioner's documents until September 28, 2010, the date the Petitioner's petition was due. The State asserts that the petition was time-barred and that the post-conviction court did not err when it dismissed the petition.

The Post-Conviction Procedure Act, as codified in Tennessee Code Annotated section 40-30-101 et seq., provides as follows:

> (a) Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this

-4-

chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

(b) No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless:

(1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;

(2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

Tenn. Code Ann. § 40-30-102(a), (b). "If it plainly appears from the face of the petition, any annexed exhibits or the prior proceedings in the case that the petition was not filed . . . within the time set forth in the statute of limitations . . . the judge shall enter an order dismissing the petition." Tenn. Code Ann. § 40-30-106(b).

Post-conviction petitions from a pro se petitioner incarcerated in a correctional facility shall be deemed "timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing." Tenn. S. Ct. R 28, § 2(G). Moreover, Rule 28 of the Supreme Court Rules provides, "Should timeliness of filing or service become an issue, the burden is on the pro se petitioner to establish compliance with this provision." Id. However, if a petitioner alleges "sufficient facts to make a threshold showing that he has complied with Rule 28 § 2(G)[,]" an evidentiary hearing should be held to determine if he timely filed his petition. See Butler v. State, 92 S.W.3d 387, 390-91 (Tenn. 2002).

-5-

In addition to the three exceptions to the one-year statute of limitations articulated in Tennessee Code Annotated section 40-30-102(b), our supreme court has held that the statute of limitations should be tolled when strict enforcement of the limitations period would infringe on a petitioner's due process rights. See Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000) (concluding that "a petitioner who is mentally incompetent is denied an opportunity to raise a claim in a meaningful manner unless the statute of limitations is tolled"); Burford v. State, 845 S.W.2d 204, 209 (Tenn. 1992) (finding that due process required tolling the statute of limitations and noting that, "[i]f consideration of the petition is barred, [the defendant] will be forced to serve a persistent offender sentence that was enhanced by previous convictions that no longer stand"). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "The flexible nature of procedural due process requires an imprecise definition because due process embodies the concept of fundamental fairness." Seals, 23 S.W.3d at 277; see also Cafeteria & Rest. Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895 (1961) ("[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."). In Buford, our supreme court observed, "[I]t is possible that under the circumstances of a particular case, application of the statute may not afford a reasonable opportunity to have the claimed issue heard and decided." 845 S.W.2d at 208.

Petitions for post-conviction relief must contain a verification under oath by the petitioner that the petition is true and correct. See Tenn. S. Ct. R 28, app. A. The oath must be sworn and subscribed to before a notary public. See id. The United States Supreme Court has recognized the plight of an incarcerated pro se petitioner. See Houston v. Lack, 487 U.S. 266, 271 (1988) ("[T]he pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay."). Our highest court has also said that states must provide indigent inmates with notarial services to authenticate legal documents. Bounds v. Smith, 430 U.S. 817, 824-25 (1977) ("[O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.").

In the instant case, the Petitioner alleges that she had her petition ready to be notarized on September 23, 2010, but that no notaries were available until September 28, 2010. It is not clear whether the Petitioner received the notarized documents back on September 28, 2010, or why the envelope containing her filing was not stamped as being received by the prison mail room until 11 p.m. on September 29, 2010. The post-conviction court did not

hold an evidentiary hearing to determine whether the Petitioner's petition was timely filed, nor does it appear that the post-conviction court considered whether due process required the statute of limitations be tolled due to the alleged fact that the two prison notaries were unavailable to notarize the Petitioner's petition.

We conclude that the order of the post-conviction court summarily dismissing the petition should be vacated. We remand this case to the post-conviction court for an evidentiary hearing, after which the post-conviction court should make factual findings regarding the circumstances surrounding the alleged absence of both prison notaries. If the post-conviction court is presented with sufficient proof to support the Petitioner's allegations that she was denied access to a notary, the post-conviction court should consider whether the facts implicate the Petitioner's constitutional right to due process of law and, if so, whether the statute of limitations should be tolled.

## Conclusion

Based on the foregoing authorities and reasoning, we vacate the order of the post-conviction court dismissing the petition for post-conviction relief. We remand this case to the post-conviction court for an evidentiary hearing regarding the circumstances surrounding the Petitioner's delay in filing her petition for post-conviction relief.

_____
DAVID H. WELLES, JUDGE