NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BENJAMIN FREEMAN, *Plaintiff/Appellant*,

*v.*

JAMES WILLIAMS, et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0470
FILED 6-15-2021

Appeal from the Superior Court in Maricopa County
No.  CV2016-015382
The Honorable Kerstin LeMaire, Judge
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Benjamin Freeman, Tucson
*Plaintiff/Appellant*

James Williams, Goodyear
*Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Brian Y. Furuya joined.

**C A T T A N I**, Judge:

¶1        Benjamin Freeman appeals the dismissal of his complaint against James and Kelly Williams.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In 2013, Freeman was charged with ten identity-theft-related felony offenses.  *See generally State v. Freeman*, 1 CA-CR 16-0074, 2017 WL 3529105 (Ariz. App. Aug. 17, 2017) (mem. decision).  Freeman represented himself at various times before and after trial, during which time court-appointed investigator James Williams was assigned to assist him.  In early 2016, Freeman was convicted of all ten offenses and sentenced to an aggregate term of 25.75 years' imprisonment; this court affirmed his convictions and sentences on appeal.  *See id.* at *2, 6, ¶¶ 9, 36.

¶3        In late 2016, Freeman filed a complaint styled as a "civil negligence action" against a variety of people and entities connected in some way to his criminal conviction, including Williams.[1]  As relevant here, Freeman alleged that Williams's performance as investigator was negligent or grossly negligent in a variety of ways—for example, failing to timely locate and subpoena requested witnesses, failing to deliver case files, and improperly allowing his daughter (Kelly Williams) to work on the case before she was licensed as an investigator—negatively affecting Freeman's ability to represent himself in the criminal case.

¶4        Over the next year and a half, the Williamses both unsuccessfully moved to dismiss the complaint.  Freeman sought to file an amended complaint and later a supplement (with addendum), which the court denied as noncompliant, for lack of service, and for failure to cure

---

[1]        Freeman also asserted claims against other named defendants including the State of Arizona and two Maricopa County Superior Court judges, Maricopa County, three members of the Maricopa County Office of the Public Defender (the Public Defender, the appellate supervisor, and one of Freeman's court-appointed attorneys), another court-appointed attorney (who represented Freeman at trial), the Maricopa County Office of Public Defense Services and Office of Contract Counsel, the deputy county attorney who prosecuted his case, another employee of the Maricopa County Attorney's Office, the Maricopa County Board of Supervisors, two individuals at the Maricopa County Sheriff's Office, and an investigator working for Williams.  The court ultimately dismissed all claims against these defendants, and those dismissals are not at issue in this appeal.

defects with the original complaint—leaving Freeman's original complaint as the operative pleading as to the Williamses. Additionally, Freeman filed multiple motions for partial summary judgment against the Williamses, and they filed a cross-motion for summary judgment, all of which were denied.

¶5 Although Freeman had previously certified that no expert was required to prove his claims, the court's ruling on the Williamses' cross-motion directed that at a forthcoming pretrial conference, the parties should be prepared to address whether investigators are licensed professionals, thus necessitating expert testimony. *See* A.R.S. §§ 12-2601, -2602; *see also generally* A.R.S. §§ 32-2401 to -2462. At that March 29, 2018 hearing, the court and the parties discussed the licensure/expert issue as well as whether a court-appointed investigator would be entitled to qualified immunity.

¶6 Although the resulting March 29, 2018 minute entry does not definitively reflect the ruling, the parties agree that the court at that time dismissed Freeman's claims against the Williamses without prejudice. That ruling provided Freeman leave to amend to address the issues discussed at the hearing, including incorporating expert evidence to establish an investigator's standard of care, along with allegations taking the complaint outside the normal realm of negligence. The court warned that, should Freeman fail to file an amended complaint curing those deficiencies by April 27, 2018, the case would be dismissed in its entirety.

¶7 Freeman submitted a proposed amended complaint, dated April 26 but filed in superior court on May 1, 2018. He again alleged that Williams had been grossly negligent in several aspects of the investigative services: failing to provide a recording of a jail phone call, failing to obtain surveillance video, failing to find the date of purchase of an alleged forgery device, failing to file a written report, failing to timely obtain witness contact information, and improperly disclosing case-related information to Kelly while she was not licensed as an investigator. Freeman added allegations that Williams himself was not licensed as a private investigator while providing these investigative services. Freeman further alleged that the Williamses' failures had denied him his constitutional rights to compulsory process, to represent himself, and to adequate investigative assistance, and he sought several million dollars in compensatory and punitive damages.

¶8 Freeman also submitted a certification that, because Williams allegedly was not licensed while acting as his investigator, expert testimony

was not required to prove his claims. Freeman attached images from the Department of Public Safety Licensing Unit's public-access website showing Williams Investigations with a valid private investigation license due to expire October 7, 2018, as well as a letter from a different court-appointed investigator discussing the public-access listing and noting how to obtain surveillance video.

¶9          The superior court did not immediately rule on whether to allow Freeman's request to file the proposed amended complaint (or his subsequent request to substitute a "new, improved and updated" version that abandoned the contention that Williams was not licensed as a private investigator), and the Williamses moved to dismiss the case with prejudice. A newly assigned judge denied the motion to dismiss, noting the previous denial of the Williamses' cross-motion for summary judgment on related issues but not referencing the March 29, 2018 dismissal.

¶10         The Williamses moved for reconsideration of that ruling, this time attaching a transcript of the March 29, 2018 hearing. Freeman opposed the motion and also filed a new request for leave to amend along with a new version of a proposed amended complaint.

¶11         In August 2019, a different judge granted reconsideration and dismissed the case with prejudice. The court noted that Freeman's proposed amended complaints did not comply with the rules governing amending pleadings and were not timely filed. Additionally, recognizing that the case had been dismissed effective March 29, 2018 and had never been reinstated, the court reasoned that Freeman's "untimely and legally insufficient" amendments did not reinstate the case, specifically noting that Freeman had "never addressed the case law and issues discussed at the March 29, 2018 hearing."

¶12         The court denied Freeman's subsequent motion for reconsideration, and Freeman appealed. The court later certified the judgment as final under Arizona Rule of Civil Procedure 54(c), and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13         Freeman argues the superior court erred by dismissing the case with prejudice rather than accepting his amended complaints, asserting in particular that his proposed amended complaint was timely filed under the prison mailbox rule and properly addressed the issues leading to the March 29, 2018 dismissal—including professional licensure and the related standard of care issue. *See Houston v. Lack*, 487 U.S. 266, 270

(1988) (holding that a pro se prisoner's notice of appeal is deemed filed when given to prison authorities for filing). Even assuming Freeman's proposed amendment was timely, dismissal was nevertheless proper.

¶14        A plaintiff pursuing a civil claim against a licensed professional based on "alleged breach of contract, negligence, misconduct, errors or omissions in rendering professional services" generally must present expert testimony to prove the professional's standard of care or liability. A.R.S. §§ 12-2601(1)–(2), -2602(B). Procedurally, the plaintiff must provide a preliminary expert opinion affidavit with their initial disclosures including the expert's qualifications, a description of the facts underlying the plaintiff's claims, and an explanation of how the professional's conduct violated the relevant standard of care and caused the plaintiff's damages. A.R.S. § 12-2602(B). Failure to provide this affidavit and evidence when required is grounds for dismissal. A.R.S. § 12-2602(F). Private investigators are licensed professionals for these purposes. *See* A.R.S. § 12-2601(3); *see generally* A.R.S. tit. 32, ch. 24 (setting the framework governing licensure of private investigators).

¶15        Although Freeman framed his claims as constitutional violations, the asserted violations were all premised on Williams's alleged gross negligence in providing professional investigative services. *See* A.R.S. § 12-2601(1)(b). And by March 2018, Williams's licensure as a private investigator and the resulting need for expert testimony to support Freeman's claims were squarely at issue. Freeman's failure to provide competent expert opinion evidence on the standard of care was one basis for the March 29, 2018 dismissal, with the court expressly allowing leave to amend to provide the missing expert evidence. *See* A.R.S. § 12-2602(F). Freeman's next proposed amended complaint and accompanying expert certification did not cure the issue, instead asserting that Williams was not licensed at the time and thus that no expert was necessary.

¶16        Freeman later abandoned that contention, acknowledging instead that Williams was indeed licensed as a private investigator. Freeman's later proposed amended complaints cited some terms from Williams's contract with Maricopa County and some regulatory statutes as bearing on the standard of care, but he never provided the requisite preliminary expert opinion affidavit or any other expert evidence meeting the substantive statutory requirements for proving a licensed professional's standard of care, breach, or causation. The only expert evidence Freeman submitted was a letter from a different court-appointed investigator primarily addressing whether Williams was licensed; the three paragraphs directed to Freeman's claims do not describe Williams's acts, whether or

5

how they violate the standard of care (or even describe the standard of care), or link Williams's acts to any asserted damages. *See* A.R.S. § 12-2602(B).

**¶17**     Because Freeman failed to cure the expert issue precipitating the March 29, 2018 dismissal, the superior court did not err by declining to reinstate Freeman's case. And while the court properly dismissed the case without prejudice initially, *see* A.R.S. § 12-2602(F), Freeman's failure to cure by the time of the August 2019 ruling—almost three years after he filed the complaint and almost one and a half years after the initial dismissal— effectively meant that the dismissal was with prejudice based on the passage of time. *Cf. Passmore v. McCarver*, 242 Ariz. 288, 290, 291–92, ¶¶ 1, 8 (App. 2017) (characterizing dismissal on this basis as dismissal for lack of prosecution, preventing automatic application of savings statute and rendering dismissal, in effect, one with prejudice).

**¶18**     Freeman's other arguments are similarly unavailing. He asserts that the Williamses' motion to dismiss with prejudice and motion for reconsideration were untimely filed (after the deadline for dispositive motions under the joint scheduling order), but fails to recognize that the case had been dismissed (albeit without prejudice) in the interim. He faults the superior court for failing to rule on a motion for partial summary judgment after the Williamses did not file a response, but the case was dismissed before he filed the motion, had not been reinstated, and ultimately never was reinstated. Freeman claims that adverse rulings by two of the judges involved (the March 27, 2018 dismissal without prejudice and the August 2019 dismissal with prejudice) prove judicial bias against him, but judicial rulings by themselves do not establish bias. *See State v. Ellison*, 213 Ariz. 116, 129, ¶ 40 (2006). And because dismissal was proper due to lack of required expert opinion testimony, we need not address Freeman's contentions regarding the applicability of qualified immunity.

## CONCLUSION

**¶19**     We affirm.

